DALY, Respondent, vs. BRENNAN, Appellant.

*January 12 — January 30, 1894.*

*Equity: Exchange of property: Fraud: Mutual mistake as to foreign law: Rescission: Pleading.*

1. Defendant gave his promissory note and some land in exchange for plaintiff's undivided interest in a contract for the purchase of certain Mexican lands and some shares of stock in a California corporation organized to purchase lands in Mexico. When plaintiff offered to make the trade, the defendant, who was a lawyer, asked if aliens could hold land in Mexico, and plaintiff replied that they could and that he had been so advised by attorneys in San Diego, Cal. (naming them), who were versed in Mexican law and whom he had paid for their opinion. Both parties were then in San Diego, and there were lawyers there from whom defendant could have learned that the lands in question could not be held by aliens. *Held*, that plaintiff's reply amounted to no more than an assertion that he had been advised as stated, and, it having been made in good faith, there was no fraud which would entitle the defendant to equitable relief.

2. Plaintiff's failure, without fraudulent intent, to inform defendant, at the time of the exchange, that one M., who had held the land contract in trust for plaintiff and others, had assigned it to another person, who held it in the same trust, is no ground for relief in equity, since such assignment made no difference in the legal rights and remedies of the defendant.

Daly vs. Brennan.

.3. In an action upon the note, a counterclaim for cancellation of the note and for the value of the land which he had given in exchange and which, so far as appears, was still in plaintiff's possession, is *held* not to be a counterclaim for a rescission of the whole transaction, and hence not to entitle the defendant to relief on the ground of a mutual mistake of fact as to the Mexican law.

APPEAL from the Circuit Court for *Douglas* County.

Action on a promissory note for $772, given by defendant to plaintiff, December 6, 1887. The defendant admitted by answer the execution of the note, and alleged certain facts by way of defense, and alleged the same facts as a counterclaim. These facts were, in brief, that the defendant gave the note, together with a deed of 320 acres of land in Dakota worth above incumbrances about $2,500, in exchange for the plaintiff's undivided interest in a contract for the purchase of a large tract of land in Lower California, Republic of Mexico, and some shares of stock in a California corporation organized for the purpose of buying lands in Lower California; that the trade was induced by false and fraudulent representations on the part of the plaintiff, the character of which is set forth in the opinion; and that said contract and shares of stock were and are absolutely worthless. The defendant brought into court the assignment and shares of stock, and offered to transfer and return them to the plaintiff, and demanded judgment that the note in suit be canceled, and that he have judgment against plaintiff for $2,500, with interest from December 6, 1887.

At the trial the plaintiff refused to prosecute upon the cause of action set forth in the complaint, claiming that he did not own the note nor authorize the bringing of the action. Defendant demanded that the action proceed to trial upon his counterclaim and the reply thereto, and the court ruled that such issue should be tried. A jury was waived, the testimony of the plaintiff and one other witness taken,

and the action submitted to the court. The court made findings negativing any fraud in the transaction, and entered judgment dismissing the counterclaim with costs, and defendant appealed.

*John Brennan,* appellant, *in pro. per.*

For the respondent the cause was submitted on the brief of *Cooper & Comfort.*

The following opinion was filed January 30, 1894:

Winslow, J. The alleged fraud upon which the counterclaim is based consisted of the following facts:

The plaintiff, with others, in August, 1887, made a contract for the purchase of over 5,000 acres of land in Lower California, Mexico, within five leagues of the coast. The contract was in the name of one of the number, named McRae, who held it under a parol trust for the benefit of all according to their respective interests. In December, 1887, both plaintiff and defendant were in San Diego, California. Plaintiff was a banker and defendant a lawyer, and they had for years lived at Madison, Dakota, knowing each other well and having an office together part of the time. Plaintiff told defendant of the contract for the purchase of the Mexican lands, and offered to trade his interest for defendant's Dakota lands. Defendant asked plaintiff if a California corporation could hold land in Mexico, or if aliens could do so. Plaintiff replied that they could; that he had been to a firm of attorneys in San Diego (giving their names) who were versed in Mexican law, and had paid $100 for an opinion, and had been informed that both McRae and the company could hold lands in Mexico. Defendant made no further investigations, took no advice, but on the strength of *Daly's* statement made the trade, deeded his Dakota land to *Daly,* and received the certificates of stock, etc., which are now known to be worthless because, by the laws of Mexico, no alien can hold the title to lands

within five leagues of the coast line. It does not appear that *Daly* did not go to the attorneys whom he named in San Diego, nor that they did not give him the opinion which he stated to defendant. Defendants land being mortgaged for $772, he gave plaintiff his note for that sum, which is the note on which the suit was brought.

Upon these facts the circuit court held — and rightly, as we think — that no actionable fraud was proven. It is very clear from defendant's own evidence that plaintiff's statement that aliens could hold land in Mexico was merely his opinion, based on the legal opinion he had obtained from lawyers in San Diego. It stands admitted here, by the absence of any proof to the contrary, that *Daly* had obtained the legal opinion which he said he had. The defendant knew that *Daly* was not a lawyer himself, and therefore could not be expected to state the Mexican law of his own knowledge. In our view of the evidence, *Daly's* statement amounted to no more than an assertion that he had been advised by attorneys of San Diego that such was the law. As we have seen, this statement of *Daly's* was true; there is nothing to show that it was not made in good faith. Wherein, then, was the fraud? *Daly* stated nothing but the opinion of attorneys given him in good faith, which he believed to be true. Defendant was a lawyer, and knew that if aliens could not hold land in Mexico the entire scheme was worthless. He was in San Diego, where are lawyers versed in Mexican law. Presumably, had he taken counsel, he would have ascertained the fact that aliens could not hold the lands in question. The means of ascertaining the truth were within his reach equally with the plaintiff, but he chose to make no investigation, trusting to the advice given to *Daly*. He cannot now be heard to say that he was defrauded. He was put upon inquiry. By the use of even a little diligence he could have obtained knowledge as to the fact, and he chose not to exer-

Daly vs. Brennan.

cise it. Equity even will not relieve under such circumstances. *Mamlock v. Fairbanks*, 46 Wis. 415; *Conner v. Welch*, 51 Wis. 431.

Another element of fraud is claimed by defendant. It appears that prior to the 6th of December, 1887, McRae had transferred his title and interest in the said contract, so far as the same affected a part of the Mexican lands, to one Cameron, which interest so assigned Cameron held under a parol trust for the parties in interest, the same in all respects as McRae held it. *Daly* did not inform the defendant of this fact when the trade was made; but the circuit court found that there was no fraudulent intent in his failure to inform defendant of this fact, and that it could work no injury to defendant, because he had exactly the same legal rights to claim his interest in the lands from Cameron as from McRae. The reasoning of the circuit court seems to us good. Not the least difference in the legal rights or remedies of the defendant resulted from the fact that Cameron was the trustee instead of McRae.

The defendant claims that even if there was no fraud he is entitled to the relief he asks on the ground of mutual mistake as to the Mexican law. It is true that a mistake as to foreign law is considered a mistake of fact rather than a mistake of law. It is true, also, that courts of equity frequently adjudge rescission of a contract entered into under mutual mistake of controlling facts. Had the defendant counterclaimed in equity for a rescission of the entire transaction, the question would be an interesting one. But he does not. He asks to rescind in part only, and to recover money damages as to the balance. He asks, in effect, to sell his land to plaintiff for $2,500 and interest. If he wished to rescind, he should have asked to rescind *in toto* and recover back his land, which, so far as appears, is still in *Daly's* name. We cannot regard the counterclaim as one for rescission, but simply as a counterclaim at

law for damages. Under the proofs, no ground is established for the recovery of money damages.

*By the Court.*— Judgment affirmed.

Upon a motion for a rehearing there was a brief for the appellant by *A. L. Sanborn*, counsel.

The motion was dismissed April 10, 1894.