## FARRELL v. THIRD NAT. BANK IN NASHVILLE et al.—101 S. W. (2d) 158.

Middle Section.   October 10, 1936.

Petition for Certiorari denied by Supreme Court, January 30, 1937.

Cornelius, McKinney & Gilbert, of Nashville, for appellant Third Nat. Bank, trustee.

Laurence B. Howard, of Nashville, guardian ad litem.

Seay, Stockell & Edwards, of Nashville, for appellee. Ritchey Cheek Farrell.

CROWNOVER, J. The original bill in this cause was filed by Ritchey Cheek Farrell against the Third National Bank of Nashville, trustee under a deed of trust executed by her, and the beneficiaries of the trust—her husband, children, grandchildren, her brothers and their children and grandchildren—seeking to have canceled and declared void and of no effect the said trust instrument and to have the trustee deliver and pay to her all of said trust property free from the terms of the trust.

On April 24, 1922, Joel O. Cheek, Sr., established a trust for the benefit of his daughter, Mrs. Ritchey Cheek Farrell, and his eight sons and the descendants of his said children, with the American Trust Company of Nashville as trustee.

Among the assets of said trust were a number of shares of stock of the Cheek-Neal Coffee Company.

In 1928 the value of the trust property was approximately $22,000,-000.

The trust instrument provided that the stock should be voted under instructions of a committee of his sons; that the trust might be revoked at any time by the unanimous vote of six of his sons (designating them); and that the stock might be sold for investment in the stock of other corporations or in other property.

In 1928 the stock of the Cheek-Neal Coffee Company was sold, with the consent of the said six sons, to the Postum Company, Inc., and stock of the Postum Company, Inc., and cash were placed in the hands of the trustee in lieu thereof.

On September 26, 1928, the six sons of Joel O. Cheek, Sr., who were given power under the trust instrument to revoke it, signed an agreement terminating the same, which was delivered to the American Trust Company.

On November 8, 1928, the trust funds were distributed in accordance with the trust deed, except as to two of the sons for whom a different trust had been created.

On December 6, 1928, Mrs. Farrell and her said six brothers each executed a written trust agreement, each delivering almost one million dollars of money and securities.

These seven trusts are substantially the same in terms and provisions and cover property substantially the same in value. Some of them appointed the National City Bank of New York as trustee, and others appointed the American Trust Company of Nashville, Tennessee, as trustee. These instruments contained no power of revocation.

By the trust instrument which Mrs. Farrell executed, she assigned to the National City Bank of New York, as trustee, cash and securities amounting to almost one million dollars for certain uses and purposes. These provided for the payment of the net income of the trust fund to the settlor during her life. If, upon her death, any of the settlor's

children or the issue of any deceased child should be then living, the trust was to continue until the death of the last survivor of them and for a period of twenty years thereafter, with certain provisions for the payment of income to such children and issue and for payment of the principal of the trust fund. If upon the death of the settlor no child or the issue of any deceased child of his should be then living, or in case of the death of all of the settlor's children and the issue of all of the settlor's children during the continuance of the trust, the trust should in either of said events continue until the death of the last survivor of the settlor's said brothers, and until such termination, and except as therein provided, the net income from the trust fund should be paid over equally to the settlor's brothers, and the issue of any deceased brother from time to time surviving, said issue to take the part their deceased parent would have taken if living, in equal shares per stirpes. Upon the termination of the trust, the trustee was to convey, transfer, and pay over the principal thereof to the issue of the settlor's brothers then living, in equal shares per stirpes; or, if no issue of the settlor's brothers was then living, to such persons as would then constitute the heirs at law of the settlor's father, Joel O. Cheek, Sr., if he had then died intestate owning real estate in Tennessee.

It was further provided that if upon the settlor's death her present or any future husband of hers was then living there should be paid to him out of the net income from the trust fund the sum of $1,000 per month so long as he should live and not marry.

It was also provided that $12,000 per year, in monthly installments, should be paid to the settlor's father, if he should be living on September 1, 1933.

In each of the trust instruments executed by Mrs. Farrell's said six brothers similar provisions were made in favor of their sister, Mrs. Ritchey Cheek Farrell, and her issue, and also similar provisions were made for the payment of $12,000 per year in monthly installments to Joel O. Cheek, Sr., and for the payment of $1,000 per month to their respective wives, so long as they should live and not marry.

In each trust instrument it is specifically provided:

"A. This instrument is executed by the Settlor in consideration of the Settlor's brothers (in the Frank L. Cheek trust 'and sister'), James H. Cheek, Leon T. Cheek, Robert S. Cheek, John H. Cheek, Newman Cheek and Frank L. Cheek, executing a substantially similar trust. The right is therefore expressly reserved to revoke and make void the trust on two weeks' written notice delivered to the Trustee, provided, however, that such right shall terminate and this trust shall forthwith become irrevocable upon delivery to the Trustee of an instrument, signed by the Settlor, the Settlor's said brothers (in the Frank L. Cheek trust 'and sister') stating that satisfactory trusts have been made by each."

On December 27, 1928, Mrs. Farrell delivered to the American Trust Company of Nashville, which was at that time the trustee under the trust instruments executed by John H. Cheek, Newman Cheek, and Robert S. Cheek, a letter which was as follows:

"We, the undersigned, Robert S. Cheek, Leon T. Cheek, Frank L. Cheek, James H. Cheek, John H. Cheek, Newman Cheek and Ritchey Cheek Farrell, hereby certify that we have all made trusts substantially similar, and that those made by Leon T. Cheek, James H. Cheek, Frank L. Cheek, and Ritchey Cheek Farrell have been made to the National City Bank of New York, as trustee, and that those made by Robert S. Cheek, John H. Cheek, and Newman Cheek have been made to the American Trust Company, of Nashville, Tennessee, as trustee, and that said trusts made by all of the undersigned are entirely satisfactory to each of us.

"Accordingly, the right to revoke the trusts held respectively by both the National City Bank of New York and the American Trust Company, of Nashville, Tennessee, is hereby expressly waived, and as of the date of this letter, all rights to revoke said trusts so made by the undersigned, shall be null and void.

"This letter may be signed in several counterparts, each one of which may bear the signature of one or more of the above named persons but the right to revoke the trust hereinabove referred to shall not be waived until the signature of each of the above named persons has been affixed to this letter or a counterpart thereof, and this letter, and all the counterparts have been delivered to the National City Bank of New York and the American Trust Company of Nashville, Tennessee.

"Very truly yours,

"[Signed] Ritchey Cheek Farrell."

(Acknowledged before a notary public.)

Counterparts of this letter were signed by Leon T. Cheek, James H. Cheek, Frank L. Cheek, Robert S. Cheek, John H. Cheek, and Newman Cheek, and all of them were delivered to the trustees.

Later Mrs. Farrell appointed the Third National Bank of Nashville, Tennessee, as successor trustee to the National City Bank of New York, and Frank L. Cheek appointed the City Bank Farmers Trust Company of New York as successor trustee to the National City Bank.

All of the trust instruments contained the following provision:

"It is the intention of the settlor that the management, control and administration of the trust estate, and all settlements hereunder, including the final settlement and distribution, shall be governed by the laws of the State of Tennessee, and this instrument, in all of its terms and provisions, shall be governed by and construed according to the statutes and judicial decisions of said State."

Frank L. Cheek was a resident of New York at the time he executed the trust agreement; the instrument was executed in New York; the trustee was a New York corporation having its principal office in the city of New York; the securities and cash, the trust property, were physically in New York prior to the delivery to the trustee, and the delivery was made in New York.

After the execution of same he asserted that the trust was invalid under the laws of the State of New York because it violated the New York laws against perpetuities.

The City Bank Farmers Trust Company, trustee, instituted proceedings in the Supreme Court of New York against Frank L. Cheek and all parties in interest under said trust to determine the validity of the trust.

The suit was defended by the guardian ad litem for the minor defendants and all the defendants' interests were represented by the trustee. Mrs. Farrell did not defend.

On June 25, 1935, the court adjudicated that Frank L. Cheek's trust was a New York trust; that the provisions of the trust instrument executed by him were valid only during the life of the said Frank L. Cheek and his father, Joel. O. Cheek, and to the extent of their interests therein; that said trust instrument was in all other respects void.

The trustee, in accordance with the decree of the court, delivered said property to Frank L. Cheek, Frank L. Cheek and Joel O. Cheek having revoked and rescinded the trust as to themselves.

On October 24, 1935, Mrs. Farrell wrote a letter to the Third National Bank demanding the assets of her trust on the ground of failure of consideration; that the consideration for the trust agreement executed by her was the execution of a substantially similar trust agreement by each of her said brothers; that the agreement executed by Frank L. Cheek had been declared null and void by the Supreme Court of New York; that the said trust agreement executed by her was executed under a mutual mistake on the part of herself and her brothers, and there was no consideration therefor, or else the consideration had failed.

On the same date Joel O. Cheek, Sr., and Herbert Farrell wrote a letter to the Third National Bank informing it that each of them consented to the revocation of the trust agreement executed by Mrs. Farrell and the surrender to her of the securities, cash, and other property held by said bank as trustee, free and discharged of said trust.

The said Third National Bank, as trustee, refused to surrender the trust property. Whereupon Mrs. Farrell filed the original bill in this cause.

The defendant the Third National Bank, trustee, filed a demurrer to said bill, which was overruled, and thereupon filed its answer.

Joel O. Cheek, Sr., died after the institution of this suit, and his death was duly suggested and proven.

A guardian ad litem was appointed for the minor defendants, and he filed an answer for each minor defendant.

The other defendants did not answer, and pro confessos were taken against them.

The chancellor heard the case on oral evidence and depositions, and held that the complainant, Ritchey Cheek Farrell, was entitled to the relief sought in the bill and he decreed that the said trust instrument be revoked and rescinded, and that the letter of December 27, 1928, making the trust irrevocable, was invalid and of no binding force and effect whatsoever, and that Ritchey Cheek Farrell was entitled to have delivered over tó her all of said property in the hands of the trustee; and the Third National Bank, in Nashville, Tennessee, trustee, was directed and ordered to pay over and deliver to her all of said property.

Motion for a new trial having been overruled, the defendant Third National Bank, trustee, and Laurence B. Howard, guardian ad litem for the minor defendants, appealed to this court, perfected their appeal, and have assigned errors, which raise only the following propositions:

(1) The chancellor erred in holding that the trust could be rescinded on the ground of mistake of law and fact.

(2) The chancellor erred in holding that the trust in controversy was executed in consideration of the other trusts then executed, and that the cancellation of the Frank L. Cheek trust by the New York court was a partial failure of consideration which entitled the plaintiff to a revocation of her trust and cancellation of the same.

(3) The chancellor erred in holding that the complainant was entitled to a rescission and cancellation of her trust, whereas he should have held 'that she should have filed a bill for specific performance against Frank L. Cheek.

(4) The chancellor erred in not holding that Mrs. Farrell had waived her right to a cancellation of the trust agreement because she failed to defend the New York suit.

(5) The chancellor erred in holding that the New York judgment was valid and resulted in a failure of consideration for which Mrs. Farrell's trust could be canceled.

(6) The chancellor erred in not holding that the execution of the trust by the Cheek heirs was a consideration for the revocation of the Joel O. Cheek, Sr., trust.

The assignments of errors will be treated all together and not separately. The bill sought to revoke and to cancel the trust instrument executed by Mrs. Farrell and to recover the proceeds of the trust from her trustee, on the ground that the New York court had declared Frank L. Cheek's trust void because it violated the New

York laws against perpetuities, which resulted in a failure of consideration for the execution of her trust instrument, she having executed said instrument on condition and in consideration of the execution of like trust instruments by Frank L. Cheek and her five other brothers. She alleged that she executed the trust instrument in good faith believing that his trust instrument executed under the laws of New York was valid, and in this she was mistaken, which mistake was one of law and fact resulting in a failure of consideration.

The determinative question is whether she is entitled to a revocation of her trust and a cancellation of the same on the grounds of mistake and failure of consideration. She executed the trust instrument in consideration that Frank L. Cheek and her five other brothers would execute like instruments, and she thought Frank L. Cheek's trust was valid under the laws of New York, but the court in that state declared it invalid as against the laws of perpetuities. This resulted in a partial failure of consideration. Now, under this state of facts is she entitled to a revocation of the trust and to a cancellation of the trust intrument on the grounds of mistake and partial failure of consideration? We think she is.

The decision of the court of New York holding that Frank L. Cheek could revoke his trust and cancel the same, on the ground that it violated the laws of New York on perpetuities, is final and binding on all the parties, and is not subject to collateral attack. It was not appealed from and all the interested parties were made parties to that suit. The court had jurisdiction of the person and the subject-matter. Frank L. Cheek was a citizen of the State of New York on December 4, 1928, when the trust was created and the trust agreement signed. He appointed a New York trustee and it had possession of all the trust property in the State of New York, hence that court had jurisdiction of the person and subject-matter and the judgment is valid and is not subject to collateral attack. Hine v. Morse, 218 U. S., 493, 31 S. Ct., 37, 54 L. Ed., 1123, 21 Ann. Cas., 782.

A foreign judgment by default is conclusive when sued on in Tennessee. Stegall v. Wyche, 5 Yerg., 83.

Where a judgment rendered by a court of another state is regular on its face, the presumption is in favor of its validity and regularity in all respects. Ray v. Proffet, 15 Lea (83 Tenn.), 517.

The New York judgment was proven as required by the Code, sections 9754-9756, and copy of the same was admitted without objection, and there is no direct attack made in the pleadings upon said judgment, therefore every presumption is in favor of its regularity. Ray v. Proffet, supra.

The judgment of the New York court being final, it results that Frank L. Cheek's trust instrument is revoked and set aside, and to this extent there is a failure of consideration.

548

The defendants seriously contend that this trust agreement will not be set aside on account of inadequacy of consideration or a partial failure of consideration. We think ordinarily a contract will not be set aside for mere inadequacy of consideration or for a partial failure of consideration that does not affect the whole contract. There is a vast difference between inadequacy of consideration and failure of consideration. "Inadequacy of consideration" is, as the term implies, a consideration not adequate or equal in value to the thing conveyed, and where the parties contract with a knowledge of what they are doing inadequacy of consideration is no ground for avoiding the contract. Inadequacy of consideration is not a ground for rescission unless it is mixed with fraud or is so great as to shock the conscience of the court. 13 C. J., 365, 612. Failure of consideration is in fact simply a want of consideration (13 C. J., 368), and if a partial failure of consideration is such as to affect the whole contract and defeat the object of the contract, then it may be a ground for rescission. 13 C. J., 368.

"Aside from enactments of this kind, the general rule appears to be that a partial failure of consideration will justify a rescission or cancellation of an obligation in equity if the contract is entire and the consideration therefore not apportionable." 1 Black on Rescission, 424, section 159.

"A partial failure of performance of a contract will not give ground for its rescission unless it defeats the very object of the contract or renders that object impossible of attainment, or unless it concerns a matter of such prime importance that the contract would not have been made if default in that particular had been expected or contemplated." 1 Black on Rescission, 512, section 198.

It is contended by the defendants that these new trust agreements were created in consideration that all of the parties would create like trust agreements, and cancel and revoke the original trust instrument created by Joel O. Cheek, Sr. It appears from the evidence that some of the Cheek sons got together and agreed among themselves to cancel the original trust agreement in consideration that new trust agreements be created by these parties in the future, but no amount was agreed upon, and they did not communicate this agreement to Mrs. Farrell, but they proceeded to revoke the original trust instrument and have distributed the proceeds of that trust among all the heirs entitled thereto, and each received approximately $2,396,510.58. But two or three months later they called in Mrs. Farrell and told her that she should create a new trust to the extent of a million dollars, had an attorney present, and drafted the instrument involved in this suit, which she signed only in consideration that six of her brothers would sign like trust instruments. Nothing was said to her about revoking the original trust agreement in consideration of the execution of the new trust instruments, and the revoca-

tion of the old trust instrument was no part of the consideration affecting her agreement.

"When one of the parties to a contract unjustifiably refuses to perform his agreement as a whole, or any substantial part of it, this gives to the other party the option to rescind the entire contract, provided he offers to do so within a reasonable time, and will restore what he has received, and provided that the situation of the parties remains so far unchanged that they can be restored to their first position." 1 Black on Rescission, 523, section 202.

"Where the assumed possibility of a desired object or effect to be attained by either party to a contract forms the basis on which both parties enter into it, and this object or effect is or surely will be frustrated, a promisor who is without fault in causing the frustration, and who is harmed thereby, is discharged from the duty of performing his promise unless a contrary intention appears." 1 Restatement of the Law of Contracts, 426, section 288.

There is no doubt that the revocation of Frank L. Cheek's trust materially affects the whole trust arrangement. It might be in the course of human events the only property that would benefit her and her children, and the revocation of that trust agreement therefore defeats the very object of the contract.

So far as Mrs. Farrell is concerned, the revocation of the original trust agreement was no part of the consideration for the new trust agreement, and all the parties are now in the same position that they were when the new trust agreements were created.

Mrs. Farrell insists that she thought the trust agreement created by her brother, Frank L. Cheek, was valid under the New York laws. She testifies that she did not know anything about the laws of New York, and did not know that Frank L. Cheek's trust agreement violated the laws of New York against perpetuities, and there is no evidence to the contrary. She further testifies that she would not have signed the trust agreement had she known that Frank L. Cheek's trust was invalid. We think this is true and that hers should be set aside not only for failure of consideration but on the ground of mistake. A mistake as to a foreign law is a mistake of fact rather than a mistake of law. Daly v. Brennan, 87 Wis., 36, 57 N. W., 963.

"If both parties to a contract make an honest mistake of law as to its effect, or are ignorant of a matter of law and enter into the contract for a particular object, the result of which would by law be different from what they mutually intended, the court will interfere to prevent the enforcement of the contract, and relieve the parties from the unexpected consequences of it. . . . And a mistake of law on the part of both contracting parties, owing to which the object of their contract cannot be attained, is sufficient ground for setting aside such contract. Champlin v. Laytin, 18 Wend. (N. Y.), 407, 31 Am. Dec., 382." 28 L. R. A. (N. S.), 844, case, note in the case of Dolvin v. American Harrow Company.

It is insisted by the defendants that the complainant should have filed a bill for specific performance instead of for rescission. We think there is nothing in this contention. She had a right of election of remedies which cannot be controlled by the defendants. One of the fundamental rights of a complainant is that of election, or choice, between both remedies and forums. Therefore, one who is entitled to rescind a contract because of mutual mistake, illegality, or failure of consideration, has the right of choice of remedies. Aetna Life Insurance Co. v. Bellos, 158 Tenn., 554, 562, 13 S. W. (2d), 795, 14 S. W. (2d), 961; Grizzard v. Fite, 137 Tenn., 103, 113, 191 S. W., 969, L. R. A. 1917D, 652; Montlake Coal Co. v. Chattanooga Co., 137 Tenn., 440, 450, 193 S. W., 1057.

"Where a contract in writing is executed by only one of the parties, under a mistake as to a fact which is of the essence of the contract, the mistake constitutes a ground for a court of equity to rescind and cancel the apparent contract as written, and to place the parties in statu quo; but it does not constitute a ground for reformation, the reason being that, by the mistake of one of the parties, there was no mutual assent to all the terms of the contract—no meeting of the minds—and hence there is no prior contract to which the writing may be made to conform. As stated by an eminent text writer: 'A mistake on one side may be ground for rescinding a contract, or for refusing to enforce its specific performance; but it cannot be a ground for altering its terms.' Where such a state of facts exists, and the mistaken party is seeking reformation of the written instrument, the court, at the instance of the other party, will treat the case as though no writing has ever existed and will restore the parties to their original positions." 9 C. J., 1167, 1168, section 18.

It is insisted that as Mrs. Farrell did not make any defense to the New York suit she waived her right to a cancellation of her trust agreement. We think this contention is not tenable for the reason that all the parties were made parties to that suit, and the trustee represented all of the parties, and the guardian ad litem represented the minors. It appears that the case had a full and fair hearing, and the court rendered a lucid opinion showing that the court had jurisdiction of the person and subject-matter. It might be equally contended that all the other parties who did not personally defend in that suit waived their rights, but we think there is nothing in this, and that the case was tried by an able judge and, as the proof shows, able attorneys.

It is further contended by the defendants that Frank L. Cheek's trust should be governed by the laws of Tennessee and was not in violation of the laws against perpetuities. We think there is nothing in this contention because the New York court passed upon that identical question and that judgment is binding upon all the parties.

█ It is further insisted that there are a lot of innocent third parties who will be affected by the revocation of this trust. The harm done to them is no greater than that done to Mrs. Farrell by the revocation of the Frank L. Cheek trust. Under this agreement all of these third parties are mere donees in so far as Mrs. Farrell is concerned, and they have no greater rights than the original parties.

█ A donee beneficiary occupies no better position than the donor and takes subject to the validity of the contract as between the original parties thereto. 1 Restatement of the Law of Contracts, 165, 166, section 140; 4 Page on Contracts, section 2393; pp. 4217, 3218, 4220; 13 C. J., 610, section 650; Fish v. First National Bank of Seattle, Wash., (C. C. A.), 150 F., 524.

"There can be no donee beneficiary or creditor beneficiary unless a contract has been formed between a promisor and promisee; and if a contract is conditional, voidable, or unenforceable at the time of its formation, or subsequently ceases to be binding in whole or in part because of impossibility, illegality or the present or prospective failure of the promisee to perform a return promise which was the consideration for the promisor's promise, the right of a donee beneficiary or creditor beneficiary under the contract is subject to the same limitation." 1 Restatement of the Law of Contracts, 165, 166, section 140.

"If the beneficiary accepts the benefits of the contract, he takes subject to its validity as between the original parties thereto, and subject to the terms and conditions of the original contract. The liability of the promisor to the beneficiary is measured by the terms of the contract between the promisor and the promisee; and the liability of the promisor cannot exceed the liability imposed upon him by such contract." 4 Page on Contracts, 4217, 4218, section 2393.

"The rights of a person for whose benefit the contract is made are subject to the equities growing out of the contract between the original parties." 13 Corpus Juris, 610, section 650. See also, Fish v. First National Bank of Seattle, Wash. (C. C. A.), 150 F., 524, 527.

It results that all the assignments of errors must be overruled and the judgment of the lower court revoking the trust and cancelling the trust instrument is affirmed, and it is ordered that the trust funds be turned over by the trustee to the complainant, Mrs. Farrell.

All the costs of the cause, including the costs of the appeal, the solicitors' fees, and the guardian ad litem's fee, will be paid out of the trust funds; and the cause is remanded to the chancery court of Davidson county for the purpose of carrying out this decree.

Faw, P. J., and DeWitt, J., concur.

## On Petition for Rehearing.

CROWNOVER, J. On petition for a rehearing, the question of the amount of fees for the solicitors for the trustee for their services

552

in the appellate courts was remanded to the chancery court for a reference to the master: City of Nashville v. Williams, 169 Tenn., 38, 82 S. W. (2d), 541; Jenkins v. Harris, 19 Tenn. App., 113, 83 S. W. (2d) 562.

Faw, P. J., and DeWitt, J., concur.