JAMES CABLE PARTNERS, L.P., A Delaware limited partnership doing business as Big South Fork Cablevision, Plaintiff/Appellant,

v.

The CITY OF JAMESTOWN, Tennessee, being represented by its Mayor, Stoney C. Duncan, and its Aldermen, Bob Bow, Harold Whited, Cordis Taubert, Mark Choate and Cain Choate, Defendant/Appellant.

Court of Appeals of Tennessee,
Western Section, at Nashville.

March 22, 1991.

Application for Permission to Appeal
Denied by Supreme Court
June 24, 1991.

Certiorari Denied Jan. 13, 1992.
See 112 S.Ct. 872.

Ernest A. Petroff, Leslie Dooley, Huntsville, Baker, Worthington, Crossley, Stansberry & Woolf, Burt A. Braverman, Washington, D.C., Cole, Raywid & Braverman, for plaintiff/appellant James Cable Partners.

R. Bruce Ray, Jamestown, for defendant/appellant City of Jamestown.

FARMER, Judge.

On March 14, 1977, the defendant, City of Jamestown, Tennessee, (hereinafter "City") adopted an ordinance which granted Clarence Harding, plaintiff's predecessor in interest:

> the exclusive right to erect, maintain, operate and utilize facilities for the operation of communications systems and additions thereto in the streets of the City

for a period of 25 years, in accordance with the applicable laws and regulations of the United States of America and the state of Tennessee, and the Charter, regulatory ordinance and regulations of the City.

The exclusive franchise was subsequently assigned to Mountain Cablevision, thereafter to Paradigm Communications, Inc., and ultimately to James Cable Partners, L.P., plaintiff.

On January 8, 1990, the City granted itself a franchise to operate a competing cable television system in Jamestown. The plaintiff filed a declaratory judgment action seeking a declaration of the rights, status, and relation of the parties hereto in regard to the exclusive franchise agreement. The City in their answer contended that the franchise was no longer "exclusive" because the exclusivity provision had been preempted by the Cable Communications Policy Act of 1984[1], codified at 47 U.S.C. § 521, et. seq. The City also argued that the exclusivity provision had been rescinded under the general contract principle of "failure of consideration." The City had reserved the right to regulate rates in this franchise agreement and it is uncontroverted that the Act now disallows and preempts the City's right of rate regulation in this case.[2] The City contends that this preempted right of regulation was the core consideration for this contract;[3] therefore, the exclusive provision fails.

The trial court held that the Act did not preempt or prohibit the grant of an exclusive franchise. In regard to the City's inability to regulate rates under the Act, the trial court found that this was the sole consideration for the exclusive grant of the franchise agreement. Accordingly, the court concluded that the exclusivity provision must fail or be rescinded due to this lack of consideration.

The issues on appeal as set forth in pertinent part by the parties are:

I. Whether the Chancellor erred in determining the Cable Communications Act did not preempt exclusive franchises and whether it was error to admit into evidence expert testimony by the draftsman of the Cable Communications Act, David Klaus, as to its meaning.

II. Whether the Chancellor erred in determining that a failure of consideration had occurred with regard to the exclusivity provision of the franchise and that, therefore, such provision should be rescinded.

### I.

### PREEMPTION.

As we have noted, the City contends that the Cable Communications Act of 1984

---

**1.** Specifically, the City contended that Sections 621 and 636 of the "Act" preempted exclusive franchises. Section 621(a)(1) provides: "A franchising authority may award ... 1 or more franchises within its jurisdiction." Cable Communications Policy Act § 621(a)(1), 47 U.S.C. § 541 (1984). Section 636 provides in pertinent part that "any provision of law of any State, political subdivision, or agency thereof, or franchising authority, *or any provision of any* franchise granted by such authority, which is inconsistent with this Act *shall be deemed to be preempted and superseded.*" (Emphasis added) *Id.* at 47 U.S.C. § 556.

**2.** The Act specifically provides that "[a]ny Federal agency or State may not regulate the rates for the provision of cable service except to the extent provided under this section. Any franchising authority may regulate the rates for the provision of cable service, or any other communications service provided over a cable system to cable subscribers, but only to the extent provided under this section.... Within 180 days after the date of the enactment of this title, the [Federal Communications] Commission shall

prescribe and make effective regulations which authorize a franchising authority to regulate rates for the provision of basic cable service in circumstances in which a cable system is not subject to effective competition." Cable Act §§ 623(a) and 623(b)(1), 47 U.S.C. at § 543. The F.C.C. (the "Commission") has determined that "effective competition" exists in a community where three television broadcasts are viewable through off-air reception. *See* FCC Cable Television Service, 47 C.F.R. § 76.5 (1990). Pursuant to this definition, James Cable is subject to effective competition.

**3.** Once an ordinance which grants a franchise is accepted and "all conditions imposed instant to the right performed, it ceases to be a mere license and becomes a valid contract, and constitutes a vested right." 12 McQuillin, Municipal Corporations § 34.06 (1986). This contract once established has the same status and effect as any other contract enforceable under the law. 36 Am.Jur.2d *Franchises* § 6 (1968).

preempts the grant of exclusive franchises. The "Act" provides in pertinent part that: "A franchising authority may award ... 1 or more franchises within its jurisdiction." Cable Act § 621(a)(1), 47 U.S.C. at § 541. In addition, the Act provides that any provision of a franchise "which is inconsistent with this Act shall be deemed to be preempted and superseded." *Id.* at § 636, 47 U.S.C. at § 556. It is the City's position that since the Act specifically authorizes multiple franchises, then the exclusivity provision is "preempted and superseded." The plaintiff argues, on the other hand, that it was the legislative intent, by expressly providing for "1" or more franchises, to specifically authorize exclusive franchises.

■ The basic rule of statutory construction is to ascertain the legislative purpose and intent as expressed in statute to be construed. The legislative intent is to be derived primarily from the natural and ordinary meaning of the language contained therein when read in context with the whole statute. The language shall not be given any forced construction that extends or places limitations upon the import of that language. *Metropolitan Government of Nashville and Davidson County v. Motel Systems, Inc.,* 525 S.W.2d 840 (Tenn.1975); *Worrall v. Kroger Co.,* 545 S.W.2d 736 (Tenn.1977).

■ In order to establish the legislative intent the plaintiff introduced the testimony of David Klaus, former counsel for the Energy and Commerce Committee of the House of Representatives. Mr. Klaus was responsible for overseeing the drafting of the Act. He testified regarding his understanding of the congressional intent and the purpose of the Act. The City objected to the testimony of Mr. Klaus at the time it was offered contending that it was inadmissible opinion testimony.[4] We must agree.

■ It is well-settled principle in this state that while documents and reports evidencing legislative intent and purpose have been freely admitted into evidence when construing statutes, we cannot resort "to the opinions of legislators or others concerned in the enactment of the law, for the purpose of ascertaining the intent of the legislature" even when there is ambiguous language used therein. *Levy v. State Bd. of Examiners, etc.,* 553 S.W.2d 909, 913 (Tenn.1977), *quoting Bowaters Carolina Corp. v. Smith,* 257 S.C. 563, 186 S.E.2d 761, 764 (1972). Furthermore, when a statute is unambiguous legislative intent can be ascertained from the face of the statute. *Neff v. Cherokee Ins. Co.,* 704 S.W.2d 1 (Tenn.1986); *Anderson v. Outland,* 210 Tenn. 526, 360 S.W.2d 44 (1962).

■ The stated purpose of the Act is:

### PURPOSES

Sec. 601. [47 U.S.C. 521] The purposes of this title are to—

(1) establish a national policy concerning cable communications;

(2) establish franchise procedures and standards which encourage the growth and development of cable systems and which assure that cable systems are responsive to the needs and interests of the local community;

(3) establish guidelines for the exercise of Federal, State, and local authority with respect to the regulation of cable systems;

(4) assure that cable communications provide and are encouraged to provide the widest possible diversity of information sources and services to the public;

(5) establish an orderly process for franchise renewal which protects cable operators against unfair denials of renewal where the operator's past performance and proposal for future performance meet the standards established by this title; and

(6) promote competition in cable communications and minimize unnecessary

---

**4.** Mr. Klaus specifically testified that the purpose of § 621 [47 U.S.C. 541] of the Act was to allow a franchising authority to employ whatever franchising power it had to grant 1, 2, 3 or more franchises. He stated that the Act was not intended to revise that authority, nor was it intended to interfere with the number of franchises awarded.

regulation that would impose an undue economic burden on cable systems. Cable Act § 601, 47 U.S.C. at § 521. The City contends that since the Act specifically provides that one of the stated purposes is to "promote competition in cable communications and minimize unnecessary regulation," then it is clear that an exclusive franchise would be inconsistent with the Act.

■ We do not agree with the City's contention. In ascertaining the legislative intent the meaning should be derived not from single or special words in a sentence or section but from the statute taken as a whole. *Hall v. State*, 124 Tenn. 235, 137 S.W. 500 (1911); *State ex rel. Thomason v. Temple*, 142 Tenn. 466, 220 S.W. 1084 (1920). Although one of the primary purposes of the Act was to promote competition, it was clearly in the contemplation of the legislature that this would not always be the case. The Act provides or allows for rate regulation in areas or communities where there is no effective competition.[5] *See* Cable Act § 623, 47 U.S.C. at § 543. In addition, the Act specifically authorizes one *or* more franchises. It is hard for us to conceptualize the grant of an exclusive franchise being *inconsistent* with the import of this language. The Act also contains a provision that clearly enumerates the legislative intention to give existing franchises their full force and effect. Section 637 of the Act provides specifically that

(a) The provisions of—

(1) any franchise in effect on the effective date of this title, including any such provisions which relate to the designation, use, or support for the use of channel capacity for public, educational, or governmental use, and

(2) any law of any State (as defined in section 3(v)) in effect on the date of the enactment of this section, or any regulation promulgated pursuant to

such law, which relates to such designation, use or support of such channel capacity,

shall remain in effect, subject to the express provisions of this title, and for not longer than the then current remaining term of the franchise as such franchise existed on such effective date.

(b) For purposes of subsection (a) and other provisions of this title, a franchise shall be considered in effect on the effective date of this title if such franchise was granted on or before such effective date.

*Id.* at § 637, 47 U.S.C. at § 557.

While we are not holding that this Act legitimizes[6] an exclusive franchise, we do not feel it was intended to preempt or prohibit such a grant. We feel this is an interpretation which is clearly and unambiguously derived from the language of the statute itself and in conformity therewith. For us to hold otherwise would be to extend or contradict the import of the language contained in this Act.

## II.

## FAILURE OF CONSIDERATION.

### A. *Partial Rescission.*

As we have noted, the plaintiff's predecessor in interest, Clarence Harding, was granted:

the *exclusive* right to erect, maintain, operate and utilize facilities for the operation of communications systems and additions thereto in the streets of the City for a period of 25 years, in accordance with the applicable laws and regulations of the United States of America and the State of Tennessee, and the Charter, regulatory ordinances and regulations of the City. (Emphasis added)

In return for this exclusive grant the cable company agreed, among other things, that:

---

5. See footnote 2. As we have indicated James Cable is subject to effective competition pursuant to the F.C.C. definition.

6. Although the language of the Act is not inconsistent with an exclusive franchise, we do not

feel this Act was intended to override state authority or state law which bars exclusive franchises. *See* Brenner & Price, Cable Television and Other Non-broadcast Video Law and Policy § 3.02(5) (1986).

*SECTION 10.* The charges by the Company shall be fair and reasonable, and exclusive of any tax or taxes which may be assessable against the scheduled installations or services, shall initially be as follows:

Charge for the standard initial attachment shall be a maximum of $30.00 for the first outlet, and $5.00 maximum for each additional connection, not exceeding three such additional connections. Charge for monthly transmission service shall be not more than $10.00 per month for the first television receiving set and $1.00 per month for each additional television receiving set, not exceeding three such additional television receiving sets. Provided that in installations requiring extension of cable or facilities in excess of the ordinary and customary requirements, or requiring additional connections in excess of three such additional connections, charges shall be negotiated between the Company and the subscriber.

No changes in the rates or charges shall be made by Company without the approval of City. The City shall be notified at least thirty (30) days prior to any proposed change of rates or charges. An explanation for the reason for making said change shall accpmpany [sic] such notice or shall be made to the Mayor and Board of Aldermen at the time of notification. The Company shall have the right to make rules and regulations governing its services, not inconsistent with the terms hereof or applicable regulations.

This exclusive franchise was ultimately assigned to the plaintiff which is indicated by an agreement between the plaintiff and defendant. The parties' agreement provides in pertinent part that:

[T]he Franchise was duly issued and is currently in full force and effect according to its terms. There exists no default or violation of the Franchise and no event has occurred that . . . would lead to default. . . .

4. As between the parties, all other provisions, terms and conditions set forth in the Franchise shall and do remain valid and in full force and effect.

5. As a consideration for the approval by the city given to James, James agrees upon the transfer of the Franchise the Franchise Fee shall be increased to five percent (5%) of the gross revenues per year from all cable services, and James agrees the Franchise Ordinance be amended to provide such Franchise fee.

This agreement was approved by the City on June 13, 1988, well after the enactment of the 1984 Act.

It is uncontroverted in this case that § 623 of the Act took away the City's right to regulate the rates of the plaintiff's cable communication system. Section 623 provided that a franchise authority could only regulate rates if the cable system in that community was not subject to "effective competition." *See* Cable Act § 623, 47 U.S.C. at § 543. The Act gave the Federal Communications Commission (hereinafter "FCC") the authority to define or determine what constitutes "effective competition." Pursuant to the FCC definition, the plaintiff is subject to effective competition; therefore, the right to regulate rates as provided for in the parties' contract is preempted by the Act.[7] The trial court held and the City contends that the ability to regulate rates was the sole consideration for the exclusive grant and, therefore, this provision should be rescinded.

■ The remedy of rescission is a discretionary matter which should be exercised sparingly and only when the situation demands such. *Early v. Street,* 192 Tenn. 463, 241 S.W.2d 531 (1951); *Robinson v. Brooks,* 577 S.W.2d 207 (Tenn.Ct.App. 1978); *Frierson v. International Agricultural Corp.,* 24 Tenn.App. 616, 148 S.W.2d 27 (1940). Whether there has been a failure of consideration is a factual question, 17A C.J.S. *Contracts* § 613 (1963), and we must, therefore, uphold the trial

---

7. The Act specifically provides that "any provision of any franchise granted by such authority, which is inconsistent with this Act shall be deemed to be preempted and superseded." Cable Act § 636(c), 47 U.S.C. at § 556(c).

court's explicit finding that there was a failure of consideration unless the evidence in this case preponderates otherwise. *See* T.R.A.P. 13(d).

The Chancellor in this case only "partially" rescinded the parties' contract. The court specifically found that "the right of the city of Jamestown to regulate rates was the whole consideration for the exclusive provision of the franchise, and therefore, the preemption of the right to regulate rates rescinded the exclusive provision of the franchise...." As a general rule, a contract can only be rescinded *in toto*. A contract can only be partially rescinded where the contract is severable. A contract is severable where each part is so independent of each other as to form a separate contract. The basic premise behind disallowing a party to affirm in part and repudiate in part is that one should not be able to "accept the benefits on the one hand while he shirks its disadvantages on the other." 17A C.J.S. *Contracts* § 416 (1963); *See Baird v. McDaniel Printing Co., Inc.*, 25 Tenn.App. 144, 153 S.W.2d 135 (1941).

Basically a contract is not severable or devisable when its purpose, terms and nature contemplate that its parts and consideration shall be interdependent and common to each other. 17A C.J.S. *Contracts* § 331 (1963). There is no precise definition of when a contract is "entire" or when it is "severable" and each case must ultimately depend on its own facts; however, a whole or entire contract has been referred to as a contract in which the "promises of both parties are interdependent and relate to the same subject matter," *Williams Hardware Co. v. Phillips*, 109 W.Va. 109, 153 S.E. 147 (1930), or "is one which may not be divided into independent parts." *LeMire v. Haley*, 91 N.H. 357, 19 A.2d 436, 439 (1941). A devisable contract, on the other hand, has been referred to as one in which the performance is "divided into different groups, each set embracing performances which are the agreed exchange for each other," *Pittsburgh Plate Glass Co. v. Jarrett*, 42 F.Supp. 723, 730 (M.D.Ga.1942), modified on other grounds, *Jarrett v. Pittsburgh Plate Glass Co.*, 131 F.2d 674 (5th Cir. Ga.1942), or a contract in which the "performance is divided into two or more parts with a definite apportionment of the total consideration to each part." *Integrity Flooring v. Zandon Corp.*, 130 N.J.L. 244, 32 A.2d 507, 509 (N.J.1943).

In the present case the plaintiff was granted an exclusive franchise in return for which they agreed to numerous conditions. This contract was not one susceptible to division whereby it could be divided into two or more parts. Each part, condition and consideration was in contemplation and accomplishment of the whole, that being to provide a cable service to the Jamestown community. Since each provision was part and parcel of the whole, this cannot be referred to as a devisable contract. Therefore, no one provision can be rescinded without the whole.

The question now becomes whether the City's right to regulate rates is such an integral part of the parties' agreement that the entire contract should be rescinded. The contract may be rescinded if the failure of consideration was such an essential part of the contract that it defeats the very object of the contract or concerns a matter of such grave importance that the contract would not have been executed had that default been contemplated. *Farrell v. Third National Bank in Nashville*, 20 Tenn.App. 540, 101 S.W.2d 158 (1936); *Lloyd v. Turner*, 602 S.W.2d 503 (Tenn.Ct. App.1980).

The City in the instant case granted the plaintiff the exclusive right to operate a cable communication system. The consideration for this grant were the conditions upon which the franchise was granted and the benefit the public proposed to derive from the operation of this franchise. 37 C.J.S. *Franchises* § 16 (1975). As conditions of this grant the plaintiff agreed: (1) to charge the regulated rates set by the City; (2) to acquire, maintain, and erect such poles, towers and facilities as are required for the operation of such; (3) to indemnify and hold harmless the City from

any claim for injury or damage to property; (4) carry insurance to protect parties against any liabilities that arise; (5) post bond in the amount of $10,000; (6) maintain the company such that it would not interfere with the off-the-air television signals; (7) relocate poles at its own expense if necessitated by the change of any street grade, allotment or width; (8) commence installation of the system within (1) year; and (9) maintain a local office. The agreement also reserved to the City the right to revoke this franchise if the company failed to comply with the provisions contained therein. In addition, the agreement also contained a severability clause. Further, the agreement wherein City approved the assignment to plaintiff increased the franchise fee to five percent (5%) of gross revenues per year.

 This is not a case where we have total failure of consideration. This is a case where one part of the consideration has been preempted by the Cable Communications Act. However, partial failure of consideration is not grounds for rescission unless the failure defeats the very object or purpose of the contract or renders that object impossible to accomplish. *Farrell*, 20 Tenn.App. 540, 101 S.W.2d 158 (1936). The preemption of this provision did not destroy the principal object of this contract. The plaintiff was required to comply with several conditions as consideration for this grant and the public still derives a benefit from its operation. There is no indication that the City's ability to regulate rates was of such grave importance that the franchise would not have been contemplated without the inclusion of such.

### B. *Monopoly.*

 The City also contends that without the ability to regulate rates that this "exclusive" grant is essentially a monopoly and in violation of Article I, Section 22 of the Tennessee Constitution which provides: "[M]onopolies are contrary to the genius of a free State, and shall not be allowed." The Tennessee Supreme Court stated in *City of Watauga v. City of Johnson City,*

589 S.W.2d 901 (Tenn.1979), that a monopoly, as enumerated in the State Constitution, is "an exclusive right granted to a few, which was previously a common right. If there is no common right in existence prior to the granting of the privilege for franchise, the grant is not a monopoly." *Id.* at 904, *citing Proprietors of Charles River Bridge v. Proprietors of Warren Bridge,* 36 U.S. (11 Pet.) 420, 9 L.Ed. 773 (1837); *Leeper v. State,* 103 Tenn. 500, 53 S.W. 962 (1899). The city of Jamestown essentially granted the plaintiff the exclusive right to use its streets in the operation of its communications system for a period of 25 years. It certainly was not a common right to use the streets of the city of Jamestown prior to this grant; therefore, this grant cannot be classified as a monopoly. *See* 12 McQuillin, Municipal Corporations §§ 34.-03–34.06 (1986). This opinion is not intended to stand for the proposition that T.C.A. § 7–59–102(a) authorizes the grant of an exclusive franchise because this issue was not raised by the parties, and therefore not addressed by this Court.

### C. *Impairment of Contract Obligations.*

 The City lastly contends that they are entitled to operate and establish a cable communications pursuant to a private act of the State Legislature, "Private Chapter No. 138" of the Private Acts of 1990. This private act specifically provides:

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:

SECTION 1. Article VII of Chapter 54 of the Private Acts of 1959, as amended by Chapter 222 of the Private Acts of 1965, and all other acts amendatory thereto, is amended by adding the following new Section:

Section ___.

(A) The board of mayor and aldermen of the City of Jamestown are authorized to establish and operate a cable television service within the confines of the City of Jamestown, Tennessee, and Fentress County, Tennessee, and to do and perform every act necessary and incidental thereto.

(B) The board of mayor and aldermen of such City of Jamestown are empowered to take and appropriate such lands and grounds, either within or without the limits of the City of Jamestown, as they may deem advisable, for the location and operation of such cable television service.

(C) The entire work, supervision, and control of the purchase, construction, operation, and maintenance of such cable television service shall be vested in the board of mayor and aldermen of the City of Jamestown. It shall be lawful for such board of mayor and aldermen to employ such subordinate officers, employees, agents, etc., as may be necessary to transact the business and do the work of constructing and operating such cable television service, and to delegate to such subordinate officers, employees, agents, etc., such authority and power as may be consistent with good business management. Such subordinate officers, employees, agents, etc., shall not have the right or authority to make any contracts binding upon such City of Jamestown unless they are expressly authorized to do so by ordinance duly passed by the board of mayor and aldermen of the City of Jamestown. The compensation to be paid to all such subordinate officers, employees, agents, etc., shall be fixed by ordinance which authorizes their appointment, and all such salaries or expenses shall be paid out of the funds or revenues herein provided for.

(D) The board of mayor and aldermen of the City of Jamestown shall have full power and authority by ordinance to make and enforce all reasonable rules and regulations from time to time for the control and management of such cable television service, and to set rates for the use of the cable television service. The city shall have the right to enter upon the premises where cable television service is used or desired for the purpose of inspecting, repairing, installing, regulating, or terminating the use of such cable television service. The city shall have the right to terminate such service on the account of the nonpayment of rates. The city shall have the full power and authority to collect and enforce collections of all monies due for the use of such cable television service or otherwise arising out of the operation of such system.

(E) The board of mayor and aldermen of the City of Jamestown shall have full power and authority to borrow money to purchase, acquire, construct, extend, improve, repair or equip any such system and issue its bonds or notes therefor, including refunding bonds, in such form and upon such terms as it may determine. Any such bonds or notes shall be issued pursuant to the procedures set forth in and shall be governed by the provisions of Tennessee Code Annotated, Title 9, Chapter 21, including provisions dealing with covenants permitted in bond resolutions, security and remedies of bondholders and the system hereinabove described shall be deemed to be a "public works project", as that term is defined in Title 9, Chapter 21, Tennessee Code Annotated.

SECTION 2. This act shall have no effect unless it is approved by a two-thirds (⅔) vote of the legislative body of the City of Jamestown. Its approval or nonapproval shall be proclaimed by the presiding officer of the city legislative body and certified by him to the Secretary of State.

SECTION 3. For the purpose of approving or rejecting the provisions of this act, it shall be effective upon becoming a law, the public welfare requiring it. For all other purposes, it shall become effective upon being approved as provided in Section 2.

The plaintiff contends that if this Act were construed to relieve the defendant of its obligation under the parties' contract, then it would be in violation of Article I, Section 20 of the Tennessee Constitution which provides that "no ... law impairing

the obligations of contracts, shall be made."

While we are aware that a state cannot impair the obligations of a contract unless it is in the bona fide exercise of police power, *Sherwin–Williams Co. v. Morris*, 25 Tenn.App. 272, 156 S.W.2d 350 (1941), we feel, however, that this issue does not need to be resolved. The Private Act by its own terms was not intended to impair or interfere with the City's obligations under the franchise agreement. The Private Act merely granted the City the authority to operate its own cable communications system. There is no indication that this "authority" was intended to override or preempt any existing obligation the City may have incurred. It merely granted or amended the City's charter to allow the City to operate such provided, however, they are not bound by other contractual obligations.

For all the foregoing reasons the judgment of the trial court is reversed and this cause is thereby dismissed. The costs of this appeal are taxed to the appellee for which execution may issue if necessary.

TOMLIN, P.J. (W.S.), and CRAWFORD, J., concur.