IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 9, 2000 Session

# TANYA TUCKER, ET AL. v. CAPITOL RECORDS, INC.

**Appeal from the Chancery Court for Davidson County**
**No. 98-2449-I    Irvin H. Kilcrease, Jr., Chancellor**

---

**No. M2000-01765-COA-R3-CV - Filed September 6, 2001**

---

In this two party action, the trial court certified three partial summary judgment orders to be final judgments pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. Plaintiff appeals, and Defendant supports the appeal. Both parties assert that the trial court's finality designations involve multiple claims under Rule 54.02. After review, we find that the dispute between these two parties involves a single claim and that none of the partial summary judgment orders entered in the trial court are final judgments within the meaning of the "multiple claims" provisions of Rule 54.02. This Court is, therefore, without jurisdiction of this appeal. The judgments of the trial court are vacated, and the case is remanded for trial on the merits.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Chancery Court**
**Vacated and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., J. joined. PATRICIA J. COTTRELL, J., filed a concurring opinion.

Jay S. Bowen and Amy J. Everhart, Nashville, Tennessee, for the appellants, Tanya Tucker and Tanya Tucker, Inc.

Aubrey B. Harwell, Jr. and Gerald D. Neenan, Nashville, Tennessee, for the appellee, Capitol Records, Inc.

## OPINION

On August 12, 1998, Tanya Tucker and Tanya Tucker, Inc., Plaintiffs, brought suit against Capitol Records, Inc., Defendant. The original complaint alleged breach of contract in two counts and sought compensatory damages, attorney fees and pre-judgment interest, along with a trial by jury. The complaint asserted that Tanya Tucker is a renowned singer/performer and recording artist and that Tanya Tucker, Inc. entered into a contract with Liberty Records, a division of Capitol Records, Inc., on March 8, 1993. Under to the terms of this contract, Tucker, Inc. was to provide the exclusive services of Tanya Tucker as a recording artist in connection with the production of

records. It is further alleged that Tanya Tucker had been a Capitol recording artist for many years and had achieved worldwide fame. The March 8, 1993 contract was to expire on October 31, 1997 unless Capitol exercised its unconditional option to extend the agreement for an additional two year period. Capitol did exercise its option and, thus, bound Tucker to continue to record exclusively for Capitol during the two years subsequent to October 31, 1997.

Under the initial term of the contract, Tucker was to record and deliver to Capitol a minimum of three LP-Masters for manufacture, distribution, promotion, advertisement, and sale. The original term expired October 31, 1997, and, when Capitol exercised its first option to extend the contract from November 1, 1997 through October 31, 1999, Tucker became obligated to record and deliver to Capitol a minimum of two additional LP-Masters.

The contract contained what is referred to as a "pay or play" provision that states in pertinent part:

Notwithstanding the foregoing, nothing contained in this Agreement shall obligate Liberty to manufacture, distribute, promote, advertise or sell records derived from masters recorded hereunder, or to have Artist in fact record or deliver the Minimum Number of Masters designated in the OPTION PERIODS AND MASTER SCHEDULE for any period hereunder. Liberty shall fulfill its entire obligation (including advance payments, if any) to Artist as to undelivered masters by notifying Artist in writing not to record and/or deliver the particular masters and by paying to Artist the difference between (a) the amount set forth in Column "B" of the Approved Recording Fund Schedule with respect to such LP-Master and (b) the amount of the actual Recording Costs, inclusive of Producer fees and advances, for the immediately preceding LP-Master; . . .

. . . .

### APPROVED RECORDING FUND SCHEDULE

| Column "A" | Column "B" | Column "C" |
|---|---|---|
| First LP-Master: | $250,000.00 | $500,000.00 |
| Second LP-Master, if any: | $250,000.00 | $500,000.00 |
| Third LP-Master, if any: | $275,000.00 | $650,000.00 |
| Fourth LP-Master, if any: | $275,000.00 | $650,000.00 |
| Fifth LP-Master, if any: | $300,000.00 | $750,000.00 |

| Sixth LP-Master, if any: | $300,000.00 | $750,000.00 |
|---|---|---|
| Seventh LP-Master, if any: | $350,000.00 | $800,000.00 |

Section 14(f) of the contract provides: "The term 'LP-Master' means a set of masters sufficient to constitute an lp-disc."

Shortly after Capitol exercised its first option to extend the Tucker contract from November 1, 1997 through October 31, 1999, Tucker asked to be released from the contract. On November 21, 1997, Capitol, acting through its Vice-President of Business Affairs, Ansel L. Davis, responded by letter:

> In view of your request, we wish to confirm that notwithstanding our exercise of the option to extend the term of her Agreement into the first option period (please see my letter dated September 24, 1997, a copy of which is attached hereto for your immediate reference), in consideration of your request, we have agreed that we will not require, nor will Tanya Tucker request, to record and/or deliver any further LP-Masters for Capitol Nashville pursuant to the Agreement, unless both parties agree otherwise hereafter in writing.

> We acknowledge that, in view of the foregoing, Tanya Tucker intends to seek to enter into an exclusive artist recording agreement with another label and we will not regard such action on her part as being in any way in breach of the Agreement. In addition, Tanya Tucker waives such rights, if any, as she may have pursuant to Paragraph 2.a., or otherwise regarding the so-called "pay or play" feature of the Agreement.

> At such time as Tanya Tucker commences to negotiate for another exclusive artist recording agreement with another label, we will negotiate in good faith at that time an appropriate "override", if any, with respect to future phonorecords on that new label, consistent with industry custom and practice.

> If you have any questions regarding this matter, please don't hesitate to contact me; otherwise, kindly confirm our agreements with respect to the foregoing by executing a copy of this letter and returning it to me at your earliest convenience.

As the proposal from Capitol to terminate the contract required Tucker to forego any claim under the "pay or play" provisions of the contract, she declined to execute the proposed termination agreement. In her complaint of August 12, 1998, Tucker alleged in part:

> 18. Recently, Tucker recorded a song to be included on a record album which is to be released by another record label as a tribute to Tammy Wynette. She recorded the track as a memorial to Ms. Wynette, recently deceased, who was one of

her heroines. Although Plaintiffs believe the Agreement no longer to be in effect because Defendant's breaches have released Plaintiffs from their obligations under the Agreement, were the Agreement in effect, it would require that Tucker obtain Defendant's approval in order to release such a performance on a record label other than that of Defendant. When the competing record company sought to obtain Capitol's approval to include Tucker's performance, however, Quigley expressly refused to allow the use of Tanya's performance unless she would waive and release her rights under the Agreement, as well as releasing all other claims against Defendant.

Capitol denied the allegation that Quigley[1] refused to allow Tucker to perform relative to the Tammy Wynette album. The deposition of Pat Quigley asserted that Quigley called the competing record company, Asylum Records in Nashville, and informed them that Capitol considered the contract at an end but that Tucker was insisting the contract remained in effect entitling Tucker to the "pay or play" compensation. Capitol took the position that Quigley further advised Asylum that, if Tucker's contention was correct, she was still bound to Capitol and litigation among all parties would be likely if Asylum released the Tammy Wynette recording.

Tucker filed a Motion for Partial Summary Judgment on her claim under the "pay or play" provision of the contract. In its order of February 20, 2000 denying this motion, the trial court observed, "The issue before the Court is whether Capitol breached the 'pay or play' provision in Paragraph 2(a) of the Exclusive Recording Agreement ('the Agreement') between Ms. Tucker and Capitol."

After reciting the execution of the contract, the exercise by Capitol of the first option, the request by Tucker of Capitol to be relieved of the contract, and the letter from Ansel Davis of November 21, 1997, the trial court stated:

> The above letter (dated November 21, 1997) was to be signed by Ms. Tucker or her representative, and returned to Capitol. However, Ms. Tucker never returned the letter to Capitol. Instead, Ms. Tucker solicited recording contracts from other record companies using the November 21, 1997 letter to verify that she had the permission of Capitol to record for another record label. Thereafter, Ms. Tucker recorded for Asylum Records, without prior to notice to Capitol. Now, Ms. Tucker rejects the November 21, 1997 letter on the basis that it is a counter-offer.

> In January of 1998, Ms. Tucker's representative had a meeting with Capitol's President and again sought Ms. Tucker's release from the March 8, 1993 Agreement or to allow Ms. Tucker to record and release an album. Capitol's President implied that Ms. Tucker was no longer a priority for Capitol and Ms. Tucker needed to be on

---

[1] Pat Quigley was at the time President of Capitol.

another record label.  Further, he stated that it would be at least one(1) year before he would consider allowing Ms. Tucker to record an album.

. . . .

In consideration of the entire record, with respect to plaintiffs' motion for partial summary judgment, the court finds that genuine issues of material facts exist as to whether Ms. Tucker was unconditionally released by Capitol from the March 8, 1993 Agreement, including Ms. Tucker's rights under paragraph 2(a), the "Pay or Play" provision.

Accordingly, plaintiffs' motion for partial summary judgment is denied.  All other matters are reserved.

On October 29, 1999, Capitol filed a Motion for Partial Summary Judgment as to Tucker's claim that Capitol breached their duty of good faith and fair dealing, which was followed on November 19, 1999 with a second motion for partial summary judgment seeking to have the trial court determine the amount of Tucker's potential recovery under the "pay or play" claim.

By order of January 25, 2000, Capitol's Motion for Partial Summary Judgment on the claim for breach of the duty of good faith and fair dealing was sustained by the trial court.  On that same date, the motion by Capitol for partial summary judgment as to the amount Tucker could recover under the "pay or play" provisions of the contract was sustained by the trial court in an order providing in part:

1.      There is no genuine issue of material fact with respect to the Second Motion For Partial Summary Judgment filed by Capitol Records, Inc. on November 19, 1999 and Capitol Records, Inc. is entitled to summary judgment on the issues addressed in that Second Motion For Partial Summary Judgment as a matter of law.

2.      The Court hereby finds that, if the Plaintiffs prove that they are entitled to any so-called "pay or play" payment or payments pursuant to Paragraph 2(a) of the Agreement between the parties that is the subject to this action: the amount of the payment, if one were owed, for the fourth LP-Master that Plaintiffs were scheduled to deliver under the Agreement would be $0.00; and the amount of the payment, if one were owed, for the fifth LP-Master that Plaintiffs were scheduled to deliver under the Agreement would be $16,187.59; and

3.      The issue of whether Plaintiffs are entitled to any so-called "pay or play" payment or payments under Paragraph 2(a) of the Agreement is reserved.

Also, on January 25, 2000, the trial court granted leave to Plaintiffs to amend their complaint to add causes of action for (1) fraudulent misrepresentation, (2) common law intentional interference

with business relations, (3) common law interference with contract, and (4) violation of Tennessee Code Annotated section 47-50-109.

On February 25, 2000, Capitol filed a Motion for Partial Summary Judgment as to counts III through VI of Plaintiff's amended complaint seeking dismissal of these four new claims, which the trial court granted by order entered May 11, 2000. This order provided in pertinent part:

> 1.  The Court finds that this is an appropriate case for an interlocutory appeal. Counsel for the parties have agreed that an interlocutory appeal of this Court's Orders granting the Motions for Partial Summary Judgment filed by Capitols (sic) Records, Inc. is appropriate, and that it should be accomplished by entering those Orders as final judgments pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.

> 2.  This Court's Final Order granting the Motion of Defendant Capitol Records, Inc. for Summary Judgment on Counts III-VI of Plaintiffs' First Amended Complaint provides that it is being entered as a final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. It is hereby ORDERED that this Court's Order entered herein on January 25, 2000, control number 156777 (granting the Motion for Partial Summary Judgment filed on October 29, 1999 by Capitol Records, Inc. herein) and this Court's Order entered herein on January 25, 2000, control number 256778 (granting the Second Motion for Partial Summary Judgment filed on November 19, 1999 by Capitol Records, Inc. herein) are hereby entered as final judgments pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure as of the date of entry of this Order, because the Court hereby expressly determines that there is no just reason for delay in entering those Orders as final judgments and the Court hereby expressly directs entry of judgment on each of those Orders as final judgments of this Court pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.

> 3.  Counsel for the parties agree that the trial of the remaining issues in this case should be continued indefinitely, pending resolution of the interlocutory appeals. Accordingly, the trial of this case, which was scheduled to begin on November 27, 2000, is hereby continued indefinitely.

Before reaching the issues in this case, we must first determine whether we have jurisdiction of the appeal. Tennessee Rule of Appellate Procedure 13(b) provides:

> Review generally will extend only to those issues presented for review. The appellate court shall also consider whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review, and may in its discretion consider other issues in order, among other reasons: (1) to prevent

needless litigation, (2) to prevent injury to the interest of the public, and (3) to prevent prejudice to the judicial process.

Tennessee Rule of Appellate Procedure 3(a) provides:

In civil actions every final judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals is appealable as of right. Except as otherwise permitted in Rule 9 and in Rule 54.02 Tennessee Rules of Civil Procedure, if multiple parties or multiple claims for relief are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties.

Finally, Tennessee Rule of Civil Procedure 54.02 provides:

Multiple Claims for Relief. - - When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

This rule is identical to Federal Rule of Civil Procedure 54(b). Therefore, the opinions of federal courts are persuasive authority in construing the finality provisions of the rule. *Bowman v. Henard*, 547 S.W.2d 527, 530 (Tenn. 1977).

The basis for appellate jurisdiction in this case is the action of the trial court reflected by its May 11, 2000 order whereby the trial court certified that its orders of January 25, 2000, granting partial judgment to Capitol on the implied covenant of good faith question and the amount recoverable by Tucker under the "pay or play" provisions of the contract, were final judgments and that its order of May 11, 2000, granting partial summary judgment to Capitol on counts III-VI of Tucker's amended complaint, was a final judgment under Tennessee Rule of Civil Procedure 54.02. The court expressly determined that there was no just reason for delay in entering these orders as final judgments. As this is not a multi-party case, appellate jurisdiction under Rule 54.02 must stand or fall on the "more than one claim for relief" provision of this rule.

For reasons articulated by the Supreme Court of Tennessee in *Bayberry Associates v. Jones*, 783 S.W.2d 553 (Tenn. 1990) and by the United States Sixth Circuit Court of Appeals in *General Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022 (6th Cir. 1994), we have determined that neither the orders of January 25, 2000, nor the May 11, 2000 order of the trial court, are final within the meaning of Rule 54.02. Thus, this Court is without jurisdiction to consider this appeal.

In its order of April 20, 1999 overruling Tucker's Motion for Partial Summary Judgment, the trial court found that "genuine issues of material facts exist as to whether Ms. Tucker was unconditionally released by Capitol from the March 8, 1993 Agreement, including Ms. Tucker's rights under paragraph 2(a), the 'pay or play' provision."

In its order of January 25, 2000 sustaining Capitol's Motion for Partial Summary Judgment as to the amount that would be owed under the "pay or play" provisions of the contract, the trial court held that "the issue of whether Plaintiffs are entitled to any so-called 'pay or play' payment or payments under paragraph 2(a) of the Agreement is reserved."

By holding that "genuine issues of material facts exist as to whether Ms. Tucker was unconditionally released by Capitol from the May 8, 1993 Agreement, including Ms. Tucker's rights under paragraph 2(a), the 'pay or play' provision" the trial court has held that genuine issues of material fact exist as to whether or not the contract was in full force and effect after Tucker's failure to accept the conditions set forth in the Ansel Davis letter of November 21, 1997. The resolution of every other issue in the case is dependent on the resolution of that contract issue. Tucker cannot claim the continued viability of the "pay or play" provisions of the contract while disavowing her exclusive commitment to record for Capitol. At the same time, Capitol has no right to disavow the "pay or play" provisions of the contract and use the exclusive recording commitment to block Tucker from recording for another company.

"When the court orders a contract rescinded at the instance of one of the parties, the law requires that the parties be put in statu quo. The court will not grant to a party recission of so much of a contract as militates against his interest and allow him to retain the benefit of that portion which inures to his benefit or profit." *Baird v. McDaniel Printing Co.*, 153 S.W.2d 135, 138 (Tenn. Ct. App. 1941). This Court has observed: "The basic premise behind disallowing a party to affirm in part and repudiate in part is that one should not be able to 'accept the benefits on the one hand while he shirks its disadvantages on the other.' 17A C.J.S. *Contracts* § 416 (1963)." *James Cable Partners, L.P. v. Jamestown*, 818 S.W.2d 338, 344 (Tenn. Ct. App. 1991).

If the contract is in effect, Capitol owes Tucker under the "pay or play" provisions of the contract. At the same time, a grant of summary judgment as to counts III-VI of the amended complaint of Tucker would seem justified since Capitol would have the right under the exclusive recording provisions to protect its contractual rights. Conversely, if the contract is not in effect, Capitol owes nothing under the "pay or play" provisions, and the interference by Capitol with Tucker's recording for the Tammy Wynette album for Asylum might well support the tort allegations in paragraph III-VI of Tucker's amended complaint, at least at the summary judgment stage. But,

neither of the parties can unilaterally terminate the contract, though either or both may unilaterally or bi-laterally breach the contract and suffer the resulting consequences. Speaking for this Court, Judge Sam Felts, with his customary incisiveness, observed: "As it takes two to make a contract, it takes two to unmake it. It cannot be changed or ended by one alone, but only by mutual assent of both parties." *Akers v. J.B. Sedberry, Inc.*, 286 S.W.2d 617, 620-21 (Tenn. Ct. App. 1955).

As there were genuine material fact issues as to whether or not the contract remained effective, the trial judge correctly refused to grant summary judgment on the contract issue. The difficulty for the parties, and for the court, is that the remainder of the issues in the case simply cannot be adjudicated without the court first adjudicating the contract question. Tennessee Rule of Civil Procedure 54.02 does not provide a "fast track" alternative to Tennessee Rule of Appellate Procedure 9. *Bayberry Assocs.*, 783 S.W.2d 553; *Mosier v. Mosier*, 1989 WL 22832 (Tenn. Ct. App. Mar. 17, 1989); *Williams v. New York Times Broad. Servs., Inc.*, 1988 WL 27257 (Tenn. Ct. App. Mar. 23, 1988); *General Acquisition,* 23 F.3d 1022.

In *General Acquistion,* GenCorp sought recovery from Shearson for part of its cost of fending off General Acquisition's hostile takeover bid. The district court refused to grant Shearson's motion for summary judgment on the question of liability but did grant partial summary judgment to Shearson on the question of damages. After appellate proceedings not material to our consideration, GenCorp, on remand, moved for reconsideration of the previous orders of the trial court, and Shearson renewed its motion for summary judgment. The district court repeated its position that liability remained in dispute but that certain damages would not be recoverable. The district court then certified its order for interlocutory review as a final judgment under Federal Rule of Civil Procedure 54(b).

In reversing the order of the district court and finding the certification under Rule 54(b) of the Federal Rules of Civil Procedure to be in error, the Court of Appeals for the Sixth Circuit construed Rule 54(b) in a lucid and expositive opinion. The portion of the opinion dealing with the multiple claims prerequisite of Rule 54(b) is so clear and complete that we will not attempt to improve on it. Said the court:

> Litigants in a single claim, two party dispute may not resort to Rule 54(b) as a basis for appellate jurisdiction. *See Liberty Mutual, supra,* 424 U.S. at 742-43, 96 S.Ct. at 1205-06. By its own terms, Rule 54(b) applies only to actions involving either multiple parties or multiple claims. In a case such as this, involving only two parties, Rule 54(b) certification necessarily depends upon the presence of multiple claims.

> In *Liberty Mutual*, the Supreme Court found it unnecessary to delineate precisely "what constitutes a claim for relief" under Rule 54(b). 424 U.S. at 744 n. 4, 96 S.Ct. at 1206 n. 4. The lack of any "generally accepted test" often makes the task of ascertaining whether a particular action presents one or more claims a formidable one. Wright, Miller & Kane § 2657; 2A Federal Procedure § 3:342 ("The

question of what constitutes a single claim for relief is unsettled and the courts are reluctant to articulate a hard-and-fast test"); 6 Moore ¶ 54.33[2] ("With the doctrine thus in ferment it is difficult to state any reliable litmus for identifying a distinct 'claim for relief.' ").

Although not acknowledged by either party, the interpretation of Rule 54(b)'s multiple claims prerequisite is not a question of first impression in this circuit. We dismissed the appeal in *McIntyre v. First National Bank of Cincinnati*, 585 F.2d 190, 191 (6th Cir. 1978), after determining that the absence of multiple claims left the district court without "authority to enter final judgment" under Rule 54(b). The plaintiff in *McIntyre* had alleged state and federal causes of action arising out of the same events. Pursuant to the district judge's instructions, the federal causes of action were tried in their entirety prior to any disposition of the state causes of action. At the conclusion of the first phase of the suit, the district court entered judgment for the defendant on the federal causes of action. The district court then certified this order for immediate appeal under Rule 54(b), even though the state causes of action remained unresolved. In dismissing the appeal, we concluded that the state and federal causes of action should be considered a single "claim" under Rule 54(b), because they shared a common factual background. We explained that "[e]ven though different theories of liability may have been asserted, the concept of a 'claim' under Rule 54(b) denotes 'the aggregate of operative facts which give rise to a right enforceable in the courts.' " *Id.* at 192 (citing *Backus Plywood Corp. v. Commercial Decal, Inc.*, 317 F.2d 339, 341 (2d Cir.), *cert. denied*, 375 U.S. 879, 84 S.Ct. 146, 11 L.Ed.2d 110 (1963)); *Gottesman v. General Motors Corp.*, 401 F.2d 510, 512 (2d Cir. 1968) (applying "operative facts" test to determine whether multiple claims were present); *CMAX, Inc. v. Drewry Photocolor Corp.*, 295 F.2d 695, 697 (9th Cir. 1961) (same). *See also* 2A Federal Procedure § 3:342 ("As used in FRCP 54(b), a 'claim' . . . is the aggregate of operative facts which give rise to the claimant's legal rights.").

Under the *McIntyre* test, Rule 54(b) certification was improper in this case because all of GenCorp's allegations concern a single "aggregate of operative facts," and therefore constitute a single claim for purposes of appellate jurisdiction. GenCorp accuses Shearson of a single wrong – prompting General Acquisition to target GenCorp, and all of GenCorp's rights against Shearson arise from the series of events preceding the attempted hostile takeover. The fact that GenCorp seeks to recover two types of damages – compensation and disgorgement – does not convert a single claim into multiple claims. "[W]hen a plaintiff is suing to vindicate one legal right and alleges several elements of damage, only one claim is presented and [Rule 54(b)] does not apply." Wright Miller & Kane § 2657. *See Liberty Mutual*, 424 U.S. at 744 n. 4, 96 S.Ct. at 1206 n. 4 ("recogniz[ing] that a complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief"). A district court's rejection of one of several requests for relief arising from a single wrong does not establish appellate

jurisdiction under Rule 54(b). *See, e.g., Arizona State Carpenters Pension Trust Fund v. Miller*, 938 F.2d 1038, 1040 (9th Cir. 1991) (no appeal permitted from dismissal of punitive damages claim where compensatory damages claim remained in district court); *Monument Management Ltd. Partnership I v. City of Pearl*, 952 F.2d 883, 885 (5th Cir. 1992) (no appeal permitted from dismissal of consequential damages claims where inverse condemnation claim remained in district court).

Rather than applying our circuit's *McIntyre* test, the parties urge this court to adopt a "recoveries" test for counting the number of claims in an action. Under the recoveries test, originally formulated in *Rieser v. Baltimore & Ohio R.R. Co.*, 224 F.2d 198 (2d Cir. 1955), multiple claims have been stated when a claimant's "possible recoveries are more than one in number and not mutually exclusive." Wright, Miller & Kane § 2657. Conversely, only one claim has been stated when "a claimant presents a number of legal theories, but will be permitted to recover only on one of them." *Id*. In other words, only one claim exists, despite multiple theories of recovery, when the "bases for recovery are mutually exclusive, or simply presented in the alternative." *Id.* GenCorp suggests that multiple claims are present in this case under the recoveries test because it seeks to recover two distinct types of damages from Shearson. Taking a slightly different tack, Shearson suggests that multiple claims are present in this case under the recoveries test because GenCorp included three different liability theories in its pleadings – breach of fiduciary duty, fraud, and negligence.

We are satisfied that this case involves only a single claim under both the *McIntyre* test and the recoveries test. As we have already explained, only one claim exists under the *McIntyre* test because all of the causes of action arise out a single aggregate of operative facts. This case also involves a single claim under the recoveries test because: (1) GenCorp's request for two types of relief does not constitute more than a single claim under any "multiple claims" test, and (2) GenCorp's three theories of liability are in fact mutually exclusive.

According to GenCorp, the claim for compensatory damages should be considered separate from the claim for disgorgement because recovery under one theory would not preclude recovery under the other. But the Supreme Court's holding in *Liberty Mutual* refutes any notion that requests for various forms of relief arising from a single breach of fiduciary duty generates multiple claims for purposes of Rule 54(b). 424 U.S. at 744 n. 4, 96 S.Ct. at 1206 n. 4; 6 Moore ¶ 54.33[2] (interpreting *Liberty Mutual* as "stat[ing] categorically that an action seeking recovery for a single injury and based upon a single theory of liability does not present more than one claim for relief because the plaintiff demands several types of relief"); Wright, Miller & Kane § 2657; 2A Federal Procedure § 3:342.

-11-

Shearson would find multiple claims in this case because GenCorp's three liability theories pursue what Shearson characterizes as "non-exclusive" recoveries. We might find this argument more persuasive if GenCorp's theories of liability were in fact non-exclusive. But the standard of exclusivity gauges the extent to which a plaintiff might be entitled to more than one recovery. As one commentator explains, where "a favorable judgment on [one] count would bar a favorable judgment on [another] count," those counts seek " 'mutually exclusive' recoveries, and hence do not constitute multiple claims." Note, *Federal Rule 54(b): The Multiple Claims Requirement*, 43 VA.L.REV. 229, 236 (1957). Because all three of GenCorp's liability theories seek to redress a common injury – the cost of defending against the hostile takeover – it is simply not true that GenCorp could recover more than once. To the extent that GenCorp prevails on any one of these theories, it could not return to court under another theory in pursuit of a double or triple recovery. *See Eckman v. Columbia Oldsmobile, Inc.*, 65 Ohio App.3d 719, 585 N.E.2d 451, 452-53 (1989) (prohibiting duplicative recovery for an injury which had been "cured" by an earlier award of relief). From this perspective, GenCorp has not stated multiple claims – it has offered alternative theories in pursuit of one recovery. GenCorp is clearly not entitled to the kind of multiple recoveries which constitute multiple claims under the recoveries test. The absence of multiple claims or parties in this case renders the district court powerless to certify the April Order for immediate appeal under Rule 54(b).

*General Acquisition,* 23 F.3d at 1027-1029.

Under the *McIntyre* test, Tucker and Capitol present a single "aggregate of operative facts." Likewise, just as General Acquisition failed the alternative "recoveries" test of *Rieser*, so the parties in the case at bar fail this alternative test. The remedies sought are "mutually exclusive."

The entire relationship between Tucker and Capitol involves a single aggregate of operative facts. Whether this aggregate of operative facts, when delineated by the trial court after trial on the merits, established breach of contract, termination of contract, alternative tort liability or no liability, these facts establish a single claim for the purposes of appellate jurisdiction under Tennessee Rule of Civil Procedure 54.02. It is equally true that, under the "recoveries" test, the types of relief sought by Tucker do not constitute more than a single claim, and the two theories of liability (contract and tort) are, in fact, mutually exclusive. Tucker cannot recover both in breach of contract and in tort.

Specifically addressing the certification for appellate review of the contract provision relative to the amount of recovery available under the "pay or play" provisions of the contract, we observe again from *General Acquisition*: "Appellate review of a question of damages prior to any determination of liability puts the proverbial cart before the horse, and such certifications are clearly reversible under the law of this circuit." *General Acquisition*, 23 F.3d at 1031.

On the record before us, the construction by the trial court of the "pay or play" provisions of the contract seems highly questionable. Likewise, it is difficult to see from the record how the contract was ever terminated. We can, however, make no determination as to any of these issues since we determine that the Court of Appeals is without jurisdiction to entertain the appeal in this case for lack of finality of the judgment under Rule 54.02.

The only way this court could entertain this appeal is by the method suggested but rejected in *Bayberry Associates*, wherein the Supreme Court observed:

> Unless an appeal from an interlocutory order is provided by the rules or by statute, appellate courts have jurisdiction over final judgments only. *Aetna Casualty & Surety Co. v. Miller*, 491 S.W.2d 85 (Tenn. 1973). Tennessee Rule of Appellate Procedure 2 authorizes the suspension of all but Tenn. Rs. Civ. P. 4, 11 or 12. Therefore, we find no bar to the suspension of Rule 3(a). However, there must be a good reason for suspension and the record should affirmatively show that the rule has been suspended. Here, we are not persuaded that there is good reason, nor does the record show that the Court of Appeals intended to suspend Tenn. R. Appellate Procedure P. 3(a).

> The trial court improperly entered a final judgment pursuant to Tenn. R. Civ. P. 54.02, and the Court of Appeals' opinion in *Bayberry Associates* should be vacated.

*Bayberry Assocs.,* 783 S.W.2d at 559. We are not persuaded that good reason exists in this case to justify suspension of Tennessee Rule of Appellate Procedure 3(a).

The judgment of the trial court declaring its orders to be final orders under T.R.C.P. 54.02 is vacated, and the case is remanded for trial. We adjudicate nothing on the issues of law or fact in the case as our opinion is limited to the erroneous designation of the trial court relative to finality under T.R.C.P. 54.02.

Costs of the appeal are assessed equally to the parties.

_____
WILLIAM B. CAIN, JUDGE

-13-