IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 13, 2004 Session

## GWINN FAYNE, ET AL. v. TERESA VINCENT, ET AL.

**Appeal from the Chancery Court for Bradley County**
**No. 98-050, 98-267      Jerri S. Bryant, Chancellor**

---

**No. E2003-01966-COA-R3-CV      Filed August 5, 2004**

---

Purchasers of real property sued sellers and real estate company seeking rescission for tortious misrepresentation and violation of the Tennessee Consumer Protection Act. The trial court rescinded the transaction and dismissed the real estate company on the basis that the salesperson was an independent contractor. Purchasers appealed asserting: (1) the salesperson was an agent rather than independent contractor; (2) the trial court did not place the purchasers in the position in which they would have been since the transaction was rescinded; and (3) the purchasers should have been awarded their attorney's fees. We agree with the trial court that the salesperson was an independent contractor, but modify and remand for further proceeding (1) relative to placing the parties in the position in which they would have been had there been no transaction and (2) concerning the allowance of purchasers' attorney's fees.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified and Remanded

H. DAVID CATE, SP. J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Michael A. Anderson, Chattanooga, Tennessee, attorney for appellants, Gwinn Fayne and Alfred Fayne.

D. Mitchell Bryant, Cleveland, Tennessee, attorney for appellees, Teresa Vincent and David Vincent.

David P. Hawley, Chattanooga, Tennessee, attorney for appellee, Re/Max Real Estate Professionals.

### OPINION
### I.

Gwinn and Alfred Fayne were the purchasers of the property in question, which is located in Quail Run Subdivision, Bradley County, Tennessee, and known as 127 Quail Cove, Cleveland, Tennessee.

David Vincent was the developer of the subdivision and the builder of the house at issue. Teresa Vincent was the wife of David Vincent and the realtor, who represented herself and her husband in the sale of the property to the Faynes.

Re/Max Real Estate Professionals [hereinafter "Re/Max"] is the real estate broker with whom Teresa Vincent was associated. Re/Max and Teresa Vincent had entered into an Independent Contractor Agreement dated April 25, 1996. Under the terms of the agreement Teresa Vincent was permitted to devote such time and effort as she saw fit to establish her own endeavors as a real estate salesperson. She was obligated to pay a fee for non-exclusive use of office facilities and was responsible for her personal expenses, such as license fees, workers' compensation insurance and self-employment taxes. She received the entire commission from her sales endeavors. The agreement also required her listings to be taken in the name of Re/Max, to attend legal education and claims prevention seminars as approved by Re/Max, and to abide by ethical standards, laws in effect and operating procedures of Re/Max.

David Vincent obtained a permit on August 15, 1994, for construction of a subsurface sewage disposal system on the property from the Tennessee Department of Environment and Conservation [hereinafter "TDEC"]. The permit required the house to be setback 90 to100 feet from the street since the septic tank and drain field were to be placed in the front yard.

The TDEC made a final inspection of the sewage system as installed on June 6, 1996. The inspector approved the system but made the following notes on the permit: "House should have been setback closer to back lot line. House set too close to street. Approx. 60' setback. Any problems will have to install pump to pump to back of lot."

On October 1, 1996, the Vincents signed the Tennessee Residential Property Condition Disclosure, which indicated they were not aware of any significant defects or malfunctions in the sewer septic system. Around this time the Vincents began to occupy the property.

A couple of months later in December, 1996, the Vincents noticed water from the front yard staining the sidewalk near the street. They had the septic system dug up and although the ground was wet, the lines were dry. Gravel was added and the system was covered. David Vincent cleaned the sidewalk by pressure washing it.

The Faynes first saw the house in January 1997, and the Real Estate Sales Agreement was signed in June 1997. Prior to closing the sale the Faynes accompanied their inspector to the property. The inspector performed a dye test and the inspection report says: "no backup or slow drainage, no seepage in drainfield."

On July 28, 1997, the sale of the property was consummated. The Faynes were represented by their own realtor, and the sales commission was split between Teresa Vincent and the Faynes' realtor.

Shortly after the Faynes took possession of the property they noticed, particularly after baths and washing clothes, an odorous fluid seeping out of the ground in the septic system area. It ran across the sidewalk and down the street. This situation continued and in January 1998, the Faynes reported the problem to the TDEC and the Vincents.

The Faynes filed this lawsuit against the Vincents on February 25, 1998, and sued Re/Max on October 29, 1998.[1] These lawsuits sought rescission or alternatively compensatory damages, punitive or treble damages, attorney's fees, and prejudgment interest based on the theories of common law fraud and deceit and the Tennessee Consumer Protection Act.

Another dye test was performed with negative results for seepage. And a water test was done in May 2002, which was negative for bacteria. However, visual evidence continued to indicate sewage seepage despite the effort of the Faynes to cut back substantially on baths and clothes washing.

While these cases were pending Alfred Fayne has been charged with a crime related to raw sewage, and the Faynes have attempted to sell the property with full disclosure of the septic system problem at a listing of $130,000. They have received no offers to purchase.

The Faynes indicate the property is currently worth approximately $130,000 based on the tax appraisal. There was evidence the septic system could be repaired for $3000 to $4500.

After the Faynes' proof in a non-jury trial the trial court dismissed the case against Re/Max, holding that Teresa Vincent was an independent contractor. At the close of the proof the trial court, while not finding intentional or fraudulent conduct, rescinded the contract, ordering the Vincents to repay the $104,500 purchase price and any additional closing costs and ordering the Faynes to reconvey the property to the Vincents.

## II.

Our review is *de novo* upon the record with a presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise. However, there is no presumption of correctness as to the trial court's conclusions of law. Tenn. R. App. P. 13(d), ***Bank/First Citizens Bank v. Citizens & Assocs.***, 82 S.W.3d 259, 262 (Tenn. 2002).

## III.

The Faynes have raised the following issues in this appeal:

---

[1] The trial of these cases was delayed due to a bankruptcy filing by the Vincents and a need for rehabilitation of Re/Max's insurance company.

(1) Whether the trial court erred in dismissing Re/Max on the grounds that Teresa Vincent, a realtor with Re/Max, was an independent contractor.

(2) Whether the trial court erred in failing to put the Faynes in the position they would have occupied if the Vincents had not misrepresented this condition of the home they sold to the Faynes.

(3) Whether the trial court erred in failing to award attorney's fees to the Faynes.

## IV.

Issue (1): Whether the trial court erred in dismissing Re/Max on the grounds that Teresa Vincent, a realtor with Re/Max, was an independent contractor.

We hold the trial court was correct.

Before we discuss the independent contractor-agent issue, it is noted that Re/Max asserts the trial court made no finding of fault relative to Teresa Vincent. To the contrary the trial court said: "I find in this case that the disclosure statement was violated." The disclosure statement was signed by Teresa Vincent and stated there was no significant defects or malfunctions with the septic system. The disclosure statement was presented to the Faynes, even though Teresa Vincent was aware of the seepage from the septic system prior to the sale. Also, it is implied from the judgment of the trial court, which requires both Teresa and David Vincent to repay the purchase price to the Faynes, that the trial court found fault on the part of Teresa Vincent.

Concerning the independent contractor agent issue, in the case of **U.S. v. Boyd**, 363 S.W.2d 193, 197, 211 Tenn. 138, 148 (Tenn. 1962), the Court quoted from the case of **Carbide & Carbon Chemical Corp. v. Carson**, 239 S.W.2d 27, 31, 192 Tenn. 150, 160 (Tenn. 1951) as follows:

> The distinctions between an independent contractor and an agent are not always easy to determine, and there is no uniform rule by which they may be differentiated. 'Generally the distinction between the relation of principal and agent and employer and independent contractor is based on the extent of the control exercised over the employee in the performance of his work, he being an independent contractor if the will of the employer is represented only by the result, but an agent where the employer's will is represented by the means as well as the result.' 2C.J.S., Agency, § 2, p. 1027.

-4-

"The distinction generally between an independent contractor and an agent 'depends upon the intention of the parties as express in the contract.'"

Other factors, which are pertinent, are found in the case of ***Youngblood v. Wall***, 815 S.W.2d 512, 516 (Tenn. Ct. App. 1991):

> 1) Whether or not the one employed is engaged in a distinct occupation or business; 2) The kind of occupation with reference to whether in the locality the work is usually done under the direction of an employer or by a specialist without supervision; 3) The skill required in the particular occupation; 4) Whether the employer or workman supplies the instruments, tools and place of work of the person doing the work; 5) The length of time for which the person is employed; 6) Method of payment, whether by time or by job; 7) Whether or not the work is part of the regular business of the employer; 8) Whether or not the parties believe they are creating the relationship of master and servant; and, 9) Whether the principal is or is not in business. ***Henry v. United States***, 452 F. Supp. 253, 254 (E.D. Tenn. 1978).

While Teresa Vincent advertised through Re/Max, attended seminars approved by Re/Max, was required to abide by ethical standards, laws in effect and operating procedures of Re/Max, and listed Re/Max as the listing agent on the properties she listed, she was free to devote such time and effort as she saw fit to establish her own endeavors as a real estate salesperson. She received the entire commission on her sales and listings with only an obligation to pay Re/Max for the non-exclusive use of office facilities. She was responsible for her personal expenses, such as license fees, workers' compensation insurance and self-employment taxes.

Considering the intentions of the parties as well as the circumstances, we hold that Teresa Vincent was an independent contractor.

### V.

> Issue (2): Whether the trial court erred in failing to put the Faynes in the position they would have occupied, if the Vincents had not misrepresented the condition of the home they sold to the Faynes.

We hold it did.

While there was some evidence to the effect that the sewer septic system could be repaired, the trial court elected to rescind the contract, and neither the Faynes nor the Vincents appealed the rescission. Rescission is an equitable remedy, it is not enforceable as of right, and the decision of

whether to grant this extraordinary remedy rests in the sound discretion of the trial court. ***True v. J. B. Deeds & Son***, 151 Tenn. 630, 634, 271 S.W.41 (1924); ***Vakil v. Idnani***, 748 S.W.2d 196, 199-200 (Tenn. Ct. App. 1987).

The Faynes contend they were not put in the position they would have occupied had there been no contract, because the trial court did not award moving expenses, loan closing expenses, property taxes, prejudgment interest and attorney's fees.[2] The Vincents complain about not being awarded the fair rental value of the property while the Faynes occupied it.

The remedy of rescission involves the avoidance, or setting aside, of a transaction. It usually involves a refund of the purchase price or otherwise placing the parties in their prior status. ***Mills v. Brown***, 568 S.W.2d 100, 102 (Tenn. 1978). When rescission is granted, the seller is entitled to compensation from the buyer for use of the real estate. Such damages are normally measured by the rental value of the property while the buyer had the property in his possession or under his control. ***Issacs v. Bokor***, 566 S.W.2d 532, 540 (Tenn. 1978). *See **Baird v. McDaniel Printing Co.***, 153 S.W.2d 135, 25 Tenn. App. 144 (Tenn. Ct. App. 1941).

It appears from the closing statement that the Faynes paid certain closing expenses and acquired a loan in order to pay the purchase price. They have had the use of the property since the closing. The trial court in attempting to place the parties in the status quo did not include the foregoing items in its calculation. Therefore, this case is remanded to the trial court for a determination of all such items as are necessary to place the parties in the positions in which they would have been had there been no contract.

On remand the trial court may consider the closing expenses, mortgage interest, real estate taxes, prejudgment interest, fair rental value and such other matters as may place the parties in their pre-contract status quo positions. If such a determination might be too time consuming, the trial court might wish to consider the appointment of a special master.

## VI.

> Issue (3): Whether the trial court erred in failing to award attorney's fees to the Faynes.

We remand for further consideration.

In the trial court's bench opinion it was not stated upon which theory, common law fraud and deceit or the Tennessee Consumer Protection Act, rescission was granted.

In the absence of a statutory or contractual provision which calls for attorney's fees, awarding of such fees is not an appropriate element of damages. ***Morrow v. Bobbitt***, 943 S.W.2d 384 (Tenn.

---

[2] Attorney's fees will be addressed in the discussion on the next issue.

Ct. App. 1996); ***State v. Brown & Williamson Tobacco Co.***, 18 S.W.3d 186 (Tenn. 2000). Thus, if rescission was based upon the theory of common law fraud and deceit, attorneys fees would not be appropriate. But if predicated on the Tennessee Consumer Protection Act, Tennessee Code Annotated § 47-18-109(e)(1) provides upon a violation of a provision of the act the court may award reasonable attorney's fees.

The issue of attorney fees is remanded. The trial court may consider the awarding of attorney's fees, if the rescission was based on a violation of the provisions of the Tennessee Consumer Protection Act, along with its consideration of those items necessary to place the parties in status quo.

## VII.

In conclusion, the dismissal of Re/Max by the trial court because Teresa Vincent was an independent contractor is affirmed. The case is remanded to ascertain such items and their calculations as will place the Faynes and the Vincents in the status quo positions they would have occupied due to the rescission. The Faynes' attorney's fees are remanded for further consideration consistent with this opinion. Court costs of this appeal are taxed one-third to the Faynes and two-thirds to the Vincents with execution awarded for its collection, if necessary.

_____
H. DAVID CATE, SPECIAL JUDGE