CaRUTHERS, J.,
delivered the opinion of the Court.
This bill is filed for the specific performance of a contract made the 4th of May, 1858, for the, sale by the complainants, of a tract of 687 acres of land in Williamson county, for $30 per acre, to the defendants.
The defendants resist upon the ground that a good title cannot be made to them. This is the only defence to the prayer of the bill.
The title is in the complainant, Mary C. Starnes, formerly Mary 0. Rudder, and was derived from her father, Richard H Rudder, under his will.
The two “ items ” upon which the question depends, are as follows:
*223 “Item 1st. I give, devise and bequeath unto my daughter, Mary C. Rudder, all my estate or property of every description, * * * * 0f -^hich I may die seized or possessed, * * * to have and to hold, all said estate or property unto her, the said Mary C. Rudder, her heirs and assigns forever. But if the said Mary C. should marry, said estate or property is to be her own sole and separate estate, and the same and every part and parcel thereof, as well as its increase and profits, shall remain free from the contracts and obligations of any person with whom she may intermarry, during her coverture, as though she had remained sole.”
“Item 2d. In the event of the death of my said daughter without lawful issue living at the time of her death, it is my will that all the estate and property devised and bequeathed unto her, shall go as she may by any instrument in the nature of a last will, under hand and seal, witnessed by three or more witnesses, direct; and the power to dispose of the same and its increase, in the event of her death without issue, either before or after the age of twenty-one years, and either while single or covert, is hereby given her, to be exercised and executed in the manner just prescribed, and in no other manner ; but in the event she leaves issue, she may provide for that issue in whatever manner she deems best, and in that event, my intent is not to limit her power over her estate at her death in any manner whatever.”
Mary C. was the only child of the testator, and he left to her all his large estate, except one tract of land devised in the third item of his will. She was then unmarried and quite young. His leading object seemed *224 to be, that she should not only be protected in the enjoyment of the property accumulated by a long life of labor and toil, but be entrusted with the discretion of making such disposition of it as her pleasure or sense of duty might dictate in any and all events. But he was, perhaps, a man of experience and observation, and contemplated the dangers that might arise in-certain changes in her condition, that would probably come up in her pursuit of happiness when she reached the state of womanhood. So in case of her marriage, all the property given, and its increase and profits, were restricted to her separate use, and guarded against the contracts and obligations of her husband. No power of disposition would be obtained by the husband under his marital right. So far, no express restrictions are imposed upon her power of disposition, nor is any particular mode prescribed by which it may be done. That is reserved for the next item, and both have to be taken together in order to ascertain the extent of her rights and powers.
The time and mode of disposition is fixed in the second item:
She may, at her death, whether she be a minor or of age, “ single or covert,” if she have no issue then living, direct how her property shall go; but tluis must be done by some instrument under seal, in the nature of a will, with three or more witnesses. Here is an evidence of his solicitude to protect her against influence or imposition. This power, he says, shall be exercised in the manner prescribed, “and in no other manner." She is not permitted to do it by gift, or sale, or deed. Since the case of Morgan v. Elam, 4 Yer., 374, where this doctrine is fully examined and settled, the law has *225 been understood in this State to be, that the power of a married woman over her separate estate does not extend beyond the plain meaning of the deed creating the estate, and that she is to be considered a feme sole in relation to it, only so far as the deed has conferred upon her the power of acting as such. When a particular mode is pointed out for the exercise of this power of disposition, she cannot dispose of it in any other way. But in this case the right to sell and dispose of it by deed, is claimed. Still more, the power to unite with her husband in the sale, it is said, is given by this will.
But the last clause in the second item provides for another state of facts: “ In the event she leaves issue, she may provide for that issue in whatever manner she deems best, and in that event, my intent is not to limit her power over her estate at her death, in any manner whatever.”
It is argued that this enlarges her power again to the extent given in the first clause of the first item; that is, that it removes the restrictions fixed in the preceding part of the second item, and makes it unlimited. But it will be observed that this power, no matter how large it may be, only arises upon the contingency that she leaves issue, and can only be exercised “at her death.” Can it be exerted before she dies, and before it is known whether the “ event ” on which it depends will occur or not, and by deed instead of .a will? When she comes to die, and has no longer any use for the property I have given her; when it ceases to be needed for her enjoyment and happiness, which is my great concern, she may make a will, and provide for her issue as she thinks best. I *226 do not intend to compel her to make an equal division among them; or, perhaps, even to give it to them at all, if she chooses not to do so: her power is to be unlimited over the property, if she desires to exercise it in the mode indicated.
It is most manifest, that the leading object and controlling intent' of the testator, was to secure all this property, and its proceeds and profits, to the use, control, and benefit of his daughter, as long as she might live, without any power, even in herself, and much less any one else, under whose influence a change in her condition might place her, to deprive herself of it. But when she should need it no longer, at her death, whether with or without children, he intended to give her the unrestricted power of selecting the objects of her bounty, and become the free and untrammelled benefactress of others, as her father had been to her. The whole arrangement presents the highest evidence of paternal love, and tender regard and confidence. His observation had taught him that his daughter might, without her fault, by over-confidence in others, be bereft of the ample provision made for her, if the power of disposition was not withheld. Her youth and inexperience at first, and after that her marriage, and the changes and new influences it brings upon the wife, made it wise and prudent to save her from herself. Then, after this first great object, her comfortable and ample support and happiness was fully accomplished, he places the whole power in her hands, and allows her to become the fountain of fortune and happiness to others.
The construction contended for by the counsel for complainants, would subvert the whole object and design of a *227 settlement like this. If the husband can, by getting the wife to join him in a conveyance, dispose of her separate property, tied up and secured as this is by the limitations and restrictions of the will, what use would there he in the guards thrown around it, and the provision by which the power of disposition is withheld, even from herself, until her death?
We think this is the proper construction of the will. And the result is, that the complainants have no power to sell the land in question, and cannot, therefore, communicate a good title to defendants. The contract will, then, he annulled, the hill dismissed, and the decree reversed.