IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 20, 2024 Session

## IN RE ESTATE OF TONI HARRIS

**Appeal from the Chancery Court for Maury County**
**No. 20-499, P-013-20      David L. Allen, Judge**
_____

**No. M2023-01824-COA-R3-CV**
_____

This is a breach of contract case involving a purchase and sale agreement for real property. Because the parties' mutual mistake of law concerning ownership of the subject property negates the prima facie element of mutual assent, there is no enforceable contract. Reversed and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Thomas M. Hutto, Columbia, Tennessee, for the appellants, Estate of Toni Harris and Sabrina Cox.

Kathleen Robson Gordon and Huntly Scott Gordon, Chicago, Illinois, for the appellees, Kevin Hoffman and Paulette Hoffman.

## OPINION

### I. Background

Toni Harris ("Decedent") died testate on January 12, 2020. Although her will was executed in California, Decedent resided at 108 Shapiro Trail in Columbia, Tennessee (the "Property") at the time of her death. Decedent's husband, Phillip Harris, predeceased her by 53 days.  Mr. Harris had three children from a previous relationship. Decedent's only child is Sabrina Cox. Ms. Cox is in contact with one of her step-siblings, Stephen Harris; however, Mr. Harris' other two children are not in contact with Stephen Harris or Ms. Cox,

and their exact whereabouts are unknown.

Decedent's will was admitted to probate in Maury County, and Ms. Cox was named as the Administrator of the Estate of Toni Harris (the "Estate," and together with Ms. Cox, in her capacity as Administrator of the Estate, "Appellants"). Decedent's will, which was executed on June 12, 2000, bequeathed her residuary estate to her husband, without mention of survivorship, *i.e.,* "I give my residuary estate to Phillip Maylen Harris."

On June 4, 2020, Paulette and Kevin Hoffman (the "Hoffmans," or "Appellees") entered into a Purchase and Sale Agreement ("Agreement") to purchase Decedent's Property. The Agreement lists the "Seller" as "Sabrina Cox, Executor for Toni Harris Estate." Closing was set for July 10, 2020. Ms. Cox and the Hoffmans were represented by different title companies. The Hoffmans' title company informed them that the Property passed to Mr. Harris' children under Decedent's will and the Anti-Lapse statute, discussed *infra*. The Hoffmans' title company informed Ms. Cox's title company of this fact, and both title companies informed their respective clients that Mr. Harris' children would need to execute Affidavits of Heirship to determine "who his heirs were as no probate of his estate had occurred." This did not occur. Rather, on or about July 8, 2020, Ms. Cox's realtor sent a notice of cancellation of the Agreement to the Hoffmans. The Hoffman's refused to sign the notice of cancellation and hired an attorney to pursue the instant lawsuit.

Based on their understanding that Ms. Cox was the sole heir of the Estate, on August 26, 2020, the Hoffmans filed a "petition to intervene (in the probate matter) and motion for specific performance for the sale of real property" against Ms. Cox individually and as Administrator of the Estate. The Hoffmans' ultimately dismissed Ms. Cox in her individual capacity, and their petition was refiled as a complaint for breach of contract in the Chancery Court for Maury County (the "trial court"). The parties filed cross- motions for summary judgment, both of which were denied on the trial court's finding that there were disputes of material fact.

On September 25 and 26, 2023, the trial court heard the case. By order of November 29, 2023, the trial court held in favor of the Hoffmans, awarding them damages for breach of contract, including attorney's fees as contemplated in the Agreement. Appellants appeal.

## II. Issues

Appellants raise the following issues for review as stated in their brief:

1. Whether as a matter of law, Appellants-Defendants were entitled to summary judgment?
2. Whether the trial court abused its discretion by not requiring compliance with T.R.C.P. 56.03?

3. Whether the statement of the evidence complies with T.R.A.P. 24?

4. Whether the Exhibits attached to the technical record were authenticated and entered at trial or filed at all in this matter?

5. Whether the trial court's final order complies with T.R.C.P. 52.01?

6. The order may not represent the Court's "considered, independent ruling based on the evidence, the filings, argument of counsel, and applicable legal principles."

7. If the judgment is not vacated and reversed, are the Appellees creditors of the estate of the decedent, or are they simply judgment creditors of an estate, the personal representative, or both?

8. Whether the court's determination that a valid and enforceable contract existed between the parties is correct?

9. If a valid and enforceable contract exists, whether a breach occurred?

10. That the Appellees-Plaintiffs failure to join necessary parties, being the heirs at law vested in title, preclude any award in the Plaintiffs favor and the court should have dismissed this matter or required the Plaintiffs to join the persons vested in title to the real property.

11. The Court's consideration of hearsay testimony by a Plaintiffs' witness under a present sense impression exception after the Defendants' objection.

12. If the trial court's order is vacated and the Defendants are found to be the prevailing party, whether the Defendants are entitled to their reasonable attorney's fees on appeal and at trial.

Again, this is a breach of contract case, and the existence of a valid, enforceable contract is the most basic threshold requirement. *Farm Credit Leasing Serv., Inc. v. Daniels*, No. W2020-01576-COA-R3-CV, 2022 WL 16953311, at * (Tenn. Ct. App. Nov. 16, 2022) (citing *Leedy v. Hickory Ridge, LLC*, No. E2022-00035-COA-R3-CV, 2022 WL 9691763, at *9 (Tenn. Ct. App. Oct. 17, 2022) (quoting *ARC Lifemed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)) ("The essential elements of any breach of contract claim include . . . the existence of an enforceable contract. . . ."). In Tennessee, "[a] valid, enforceable contract requires consideration and mutual assent, manifested in the form of an offer and an acceptance." *Ace Design Group, Inc. v. Greater Christ Temple Church, Inc.*, No. M2016-00089-COA-R3-CV, 2016 WL 7166408, *7 (Tenn. Ct. App. Dec. 8, 2016) (citing Restatement (Second) of Contracts §§ 17, 22 (1981)). "Under general principles of contract law, a contract must result from a meeting of the minds of the parties in mutual assent to the terms." *Sweeten v. Trade Envelopes, Inc.*, 938 S.W.2d 383, 386 (Tenn. 1996). Here, we have concern as to whether the parties' mutual mistake of law concerning ownership of the Property precludes mutual assent, thus negating any contract between them. We turn first to that question. Whether a valid and enforceable contract has been formed between the parties is a question of law, which we review de novo on the record with no presumption of correctness. *ICG Link, Inc. v. Steen*, 363 S.W.3d 533, 543 (Tenn. Ct. App. 2011); *German v. Ford*, 300 S.W.3d 692, 701 (Tenn. Ct. App. 2009) (citing *Murray v. Tenn. Farmers Assurance Co.*, No M2008-00115-COA-

R3-CV, 2008 WL 3452410, at *2 (Tenn. Ct. App. Aug. 12, 2008)).

## IV. Analysis

Here, the question of whether the Agreement is an enforceable contract for the sale of the Property requires us to consider the ownership of the Property. As noted above, Decedent bequeathed her residual estate to her husband, Phillip Harris, who predeceased her. The will contains no language requiring that Mr. Harris survive his wife in order to take the bequest. As such, Tennessee Code Annotated section 32-3-105(a), the so-called Anti-Lapse Statute, was triggered on Decedent's death. The statute provides:

> (a) Whenever the devisee or legatee or any member of a class to which an immediate devise or bequest is made, dies before the testator . . . leaving issue that survives the testator, the issue shall take the estate or interest devised or bequeathed that the devisee or legatee or the member of the class, as the case may be, would have taken, had that person survived the testator, unless a different disposition thereof is made or required by the will.

It is undisputed that Mr. Harris was survived by his three children, who also survived the Decedent.

Furthermore, Tennessee Code Annotated section 31-2-103 provides, in relevant part, that "[t]he real property of a testate decedent vests immediately upon death in the beneficiaries named in the will, unless the will contains a specific provision directing the real property to be administered as part of the estate subject to the control of the personal representative." As this Court has explained:

> It is well established that "[i]f the decedent is testate, real property vests immediately in the devisee named in the will unless it specifically directs that the property be part of the estate under the control of the executor." Pritchard on Wills and Administration of Estates, § 634. Tenn. Code Ann. § 31-2-103. "If the representative attempts to sell lands without authority granted by will, his conveyance is a nullity . . . [.]" Pritchard on Wills and Administration of Estates, § 634.

*In re Estate of Shubert*, No. E2014-01754-COA-R3-CV, 2015 WL 4272192, at *3 (Tenn. Ct. App. July 15, 2015) (quoting the trial court with approval). Here, there is no language in Decedent's will requiring real property to be administered as part of the Estate. Thus, at Decedent's death, by operation of the Anti-Lapse statute and pursuant to Tennessee Code Annotated section 31-2-103, the subject Property vested in Phillip Harris' children. Because the fee vested in Mr. Harris' children by operation of law, the Property passed outside Decedent's Estate. Therefore, although Ms. Cox is Decedent's only surviving child, she did not inherit the Property under the will. Furthermore, because the Property

passed outside the Estate, Ms. Cox's designation as Decedent's Administrator did not give her authority over the Property so that she could contract to sell it. Nonetheless, on appeal, Appellees argue that the Estate should have been administered under California law, and had it been so, Ms. Cox, as Decedent's Administrator, would have the authority to transfer the Property. As stated in their brief:

> Mrs. Harris was domiciled in California when she executed her Will. Paragraph 11 of the Will "direct(s) the personal representative to petition the court for an order to administer the estate under the provisions of the Independent Administration of Estates Act." This demonstrates that Mrs. Harris specifically intended for the Will to be administered under California law and for the personal representative to have the powers granted by the IAEA.

(Citations to the record omitted). As we read their argument, Appellees contend that California law contains no anti-lapse provision and argue that, "[u]nlike Tennessee, California requires real property owned solely by a decedent in fee simple to remain a part of the probate estate and to be administered by the personal representative." Thus, Appellees urge that, if Decedent's Estate were subject to administration under California law, Ms. Cox, as Decedent's Administrator, would have authority to sell the Property. Unfortunately, Appellees did not raise the question of choice of law in the trial court, and we cannot address it now. "It is well settled that issues not raised at the trial level are considered waived on appeal." ***Moses v. Dirghangi***, 430 S.W.3d 371, 381 (Tenn. Ct. App. 2013) (citing ***Waters v. Farr***, 291 S.W.3d 873, 918 (Tenn. 2009)).[1]

By their complaint, Appellees seek specific performance of the purchase and sale Agreement, but specific performance is not available as Ms. Cox cannot pass good title to Appellees. *See, e.g.,* ***Starnes v. Allison***, 39 Tenn. 221, 1858 WL 3017 (Tenn. 1858) (standing for the proposition that "[a] specific performance of a contract for the sale of land will not be enforced, unless the [seller] can make the [buyer] a good and indefeasible title."). In the early case of ***Cross v. Buskirk-Rutledge Lumber Co.***, the Tennessee Supreme Court explained:

> An agreement of the [seller] to make or cause to be made "a deed in fee for said land" was held to mean, "not simply a deed good in form, but one fully operative in effect to pass to the [buyer] an indefeasible fee-simple estate."
> By the contract in this case, [sellers] agreed to execute "an apt and

---

[1] In their complaint, Appellees acknowledge that the Decedent's will was probated in Maury County, Tennessee, and state that, "Jurisdiction and venue are proper in Maury County as actions related to real property are proper in the County in which the property is located and the probate case is also in Maury County." We agree.

proper deed with covenants of general warranty." The contract also recited that the [sellers] "are joint owners" of the tract of land. . . . [A]n agreement on the part of the [seller] to execute a warranty deed, a general warranty deed, or a good and sufficient warranty deed implies that his title is good and binds him to convey a good title. Such a contract is not satisfied by deed of a [seller] who has not a good title.

Inasmuch, therefore, as [sellers] contracted to convey a good title to these lands, unless they have in fact made a deed passing a good title, their contract cannot be said to have been completed or executed, by any delivery to [seller] . . . .

\*\*\*

It therefore follows that if [sellers] do not possess good title to this tract of land, their contract with the [buyer] cannot be said to have been executed by mere delivery of a deed formally correct. They contracted to convey good title, and they have not done so. They have not yet performed the terms of the contract by them to be performed. They have not fully invested the [buyer] with dominion of the thing parted with. They have conveyed a title in action and not a settled title.

*Cross v. Buskirk-Rutledge Lumber Co.*, 201 S.W. 141, 143 (Tenn. 1918). The same is true here. In more modern parlance, the purpose of the parties' Agreement was to affect the passing of good title from the seller to the buyer. Here, Ms. Cox had no ownership in, or authority over, the Property. As such, the Hoffmans could not obtain good title from Ms. Cox because she had no interest to transfer, nor any authority to sell. *Estate of Shubert*, 2015 WL 4272192, at \*3 (citing Pritchard on Wills and Administration of Estates, § 634) ("If the representative attempts to sell lands without authority granted by will, his [or her] conveyance is a nullity . . . [.]"). This Court has noted that:

[Y]ou can't sell property you don't own, and you can't act as a real estate agent when you're not one. . . . This contract [for the sale of real property] is completely invalid, because [seller] didn't own the property, and [] didn't have anything from [the actual owner] saying, Yes, sell my property. . . . So the bottom line of this case is, you can't sell property you don't own, if you're not a real estate agent, and don't have a signed contract [conferring agency over the property]. So [the contract] is invalid on its face, because you can't sell something you don't own . . . .

*Atchley v. Tennessee Credit, LLC*, No. M2013-00234-COA-R3-CV, 2014 WL 4629042, at \*2 (Tenn. Ct. App. Sept. 16, 2014), *perm. app. dismissed* (Tenn. Dec. 22, 2014) (quoting

the trial court with approval).[2]

Here, of course, there is no allegation of fraud or misrepresentation on the part of Ms. Cox. Rather, the parties were traveling under the same mistake of law, *i.e.*, that Ms. Cox could pass good title. As Appellees state in their complaint, "Sabrina Cox had and has the authority as the Executor and the sole heir to complete the sale of the Property to Petitioners." Likewise, Ms. Cox acted under the mistaken assumption that she either owned the Property by inheritance, or was authorized, as Decedent's Administrator, to affect the sale on behalf of the Estate. However, by operation of law, *see discussion supra*, neither of these things were true.

Although mistake of law is usually not a ground to excuse contract performance, in some cases, such mistake can negate the prima facia element of mutual assent, thus resulting in no contract formation. As this Court has explained:

> Generally, a mutual mistake of law is not grounds for rescission. ***State ex rel. McCormack v. Am. Bldg. & Loan Ass'n***, 150 S.W.2d 1048, 1065 (Tenn. 1941). However, "if the parties have made an honest mistake of law as to the effect of an agreement, or where they are ignorant of the law when they form the contract, and the result is different from what they intended, then the contract can be unenforceable for lack of mutual assent." 21 Tenn. Prac. Contract Law and Practice § 6:50 (citing ***Farrell v. Third Nat. Bank***, 101 S.W.2d 158 (Tenn. Ct. App. 1936)). In ***Farrell*** this Court observed:

>> If both parties to a contract make an honest mistake of law as to its effect, or are ignorant of a matter of law and enter into the contract for a particular object, the result of which would by law be different from what they mutually intended, the court will interfere to prevent the enforcement of the contract, and relieve the parties from the unexpected consequences of it . . . . And a mistake of law on the part of both contracting parties, owing to which the object of their contract cannot be attained, is sufficient ground for setting aside such contract.

> 101 S.W.2d at 164 (internal citations omitted). Similarly, our analysis is guided by the following statement from Corpus Juris Secundum on Contracts:

>> A mutual mistake of law can be grounds for rescission of a contract, and where the mistake of law is mutual, equity will sometimes relieve on the ground of surprise. Likewise, when

---

[2] ***Atchley*** involved the application of the after-acquired-title doctrine, which is not relevant here.

all the parties think that they understand the law, but all are mistaken in the same way, a mistake of law will permit the rescission of the contract. However, a mutual mistake of law is not a ground for relief from an agreement entered into with a full knowledge of the facts.

In order for a party to claim mutual mistake of the law, the parties must both be mistaken as to the law at the time the contract is entered into.

17A C.J.S. Contracts § 191 (2019) (footnotes omitted).

*Middendorf v. Middendorf*, No. M2018-00409-COA-R3-CV, 2019 WL 2655779, at *11 (Tenn. Ct. App. June 27, 2019), *perm. app. denied* (Tenn. Dec. 4, 2019).

Here, the parties' mutual mistake as to the Property's owner results in the objective of their Agreement being unattainable, *i.e.,* under existing circumstances, Ms. Cox cannot pass good title to this Property. As such, there is no mutual assent between the parties; in the absence of this *prima facie* element, there is no contract to enforce.

In the absence of an enforceable contract, we reverse the trial court's order *in toto,* including its damage award, attorney fee award, the lien against the Estate, the requirement for an accounting and inventory, and its order requiring the Property to be listed for sale. For the same reason, we deny Appellants' request for appellate attorney's fees. All remaining issues are pretermitted as moot.

## V. Conclusion

For the foregoing reasons, the trial court's order is reversed. Appellants' request for appellate attorney's fees is denied. The case is remanded for entry of an order dismissing Appellees' complaint, and for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed one-half to Appellants, Estate of Toni Harris and Sabrina Cox, and one-half to Appellees, Kevin Hoffman and Paulette Hoffman. Execution for costs may issue if necessary.

_____s/ Kenny Armstrong_____
KENNY ARMSTRONG, JUDGE